## NATIONAL SURETY COMPANY v. JOSEPH A. HURLEY.[1]

July 16, 1915.

Nos. 19,355—(229).

**Trust for creditors — vested interest.**

1. Where a debtor, by trust deed assented to by all his creditors, con-

[1] Reported in 153 N. W. 740.

veyed his property to trustees to be converted into money and the proceeds thereof to be distributed to his creditors, the creditors took a vested and not a contingent interest in the trust estate.

**Garnishment of creditor's interest.**

2. The interest of a creditor in such trust estate is subject to garnishment; and, if it cannot be determined at the time of the disclosure whether the amount to which such creditor is entitled will be sufficient to satisfy the claim of the plaintiff in the garnishment proceeding, the garnishment proceeding should be continued until the amount applicable to such claim can be determined.

**Same — evidence.**

3. By service of the garnishee summons, plaintiff impounded the interest of defendant Hurley in the trust estate in the hands of the garnishees, and it sufficiently appeared at all times that Hurley's interest in such estate was more than sufficient to satisfy plaintiff's claim.

Supplemental complaint by the judgment creditor in the above entitled action in the district court for Ramsey county to charge the garnishees with the sum of $3,792 to respond to such final judgment as plaintiff might recover. The garnishees thereafter paid the money into court. The case was tried before Catlin, J., who ordered judgment in favor of plaintiff for the sum of $2,000. From an order, Kelly, J., denying his motion for a new trial, Charles A. Bettingen, as trustee in bankruptcy of Joseph A. Hurley bankrupt, intervener, appealed. Affirmed.

*Walter L. Chapin,* for appellant.
*Russell L. Moore,* for respondent.

TAYLOR, C.

The firm of Thomas Fitzpatrick and son became financially embarrassed, and, on March 12, 1908, conveyed their property to Luther S. Cushing, Fred S. Berry and William Poppenberger in trust to convert the same into money within two years from that date, and to apply the proceeds thereof in the payment of their debts in the manner prescribed in the trust deed. The property so conveyed included the sum of $8,000 in money and the real estate hereinafter mentioned. By contract in writing all their creditors became parties to the trust agreement and bound thereby. The trust deed

described 22 parcels of real estate, and, after enumerating the incumbrances and lienable claims against each parcel, provided that the proceeds of such parcel should be applied in satisfying the incumbrances and lienable claims against it, and that the surplus, if any, remaining after satisfying such claims, should be placed in the general fund for distribution among the unsecured creditors. It also provided that so much of any secured claim as should not be satisfied out of the security, should be considered as an unsecured claim and be paid *pro rata* with the other unsecured claims.

Within the two years prescribed by the trust deed, the trustees converted all the property into money and had the greater portion of the proceeds in their possession in cash. The purchasers of certain parcels of the property, however, required certain things to be done before accepting the title, and deposited the purchase price for such parcels in the bank to be delivered to the trustees as soon as the title appeared clear. The requirements of these purchasers were complied with and all these amounts were delivered to the trustees in and prior to August, 1911. In April and May, 1911, the trustees made an apportionment among the creditors of all the funds, including those not then turned over to them by the banks. There was some contention that the trustees had not properly apportioned the funds, and they declined to make any payments until either all the creditors had agreed to the apportionment in writing and directed them to make payments in accordance therewith, or the matter had been determined in court. An agreement approving this apportionment and directing the distribution of the funds in accordance therewith was drawn up and dated May 5, 1911. Some of the creditors signed this agreement in May, others in June and others at later dates. A few did not sign it at all. Some of the larger creditors gave a bond to the trustees indemnifying them against the claims of the creditors who had not signed the agreement and thereupon all the funds were distributed according to the apportionment of May 5.

Joseph A. Hurley was one of the creditors of the Fitzpatricks and held lienable claims against them amounting to over $9,000. In the division of funds made by the trustees on May 5, 1911, the sum

of $3,792.38 was apportioned to him. In June, 1911, plaintiff brought suit against Hurley, and subsequently recovered a judgment for the sum of $1,293.50 therein. On June 21, 1911, plaintiff garnished the above named trustees. They appeared and disclosed that according to their books they had the sum of $3,792.38 belonging to Hurley. Not satisfied with the disclosure, plaintiff, by leave of court, served and filed a supplemental complaint. While the matter was pending upon this supplemental complaint, and on April 25, 1912, Hurley was adjudged a bankrupt, and C. A. Bettingen was appointed trustee in bankruptcy of his estate. Bettingen as such trustee appeared and served and filed a complaint in intervention, in which he claimed the fund involved in the garnishment proceeding; and the present controversy is whether he as trustee in bankruptcy is entitled to all the money in the hands of the garnishees belonging to Hurley, or whether plaintiff, under its garnishment, is entitled to sufficient thereof to satisfy its judgment. The garnishees disclaiming any interest in the controversy made an application to be permitted to pay into court the money in their hands belonging to Hurley. This application was granted. They had previously paid a small claim against Hurley, and paid the remainder of the money, amounting to the sum of $3,349.02, into court and were discharged.

The intervener contends that the amount which Hurley would receive out of the trust property could not be determined until the trust had been wound up and an accounting had either in court or by mutual agreement out of court; and that at the time of the service of the garnishee summons his interest in the property depended upon a contingency and for that reason could not be reached by garnishment. The statutes provide:

"The service of the summons upon the garnishee shall attach and bind all the property and money in his hands or under his control belonging to the defendant, and all indebtedness owing by him to the defendant at the date of such service, to respond to final judgment in the action." G. S. 1913, § 7862.

"All moneys and other personal property, including such property of any kind due from or in the hands of an executor or admin-

istrator, and all written evidences of indebtedness, whether nego-
tiable or not, or under or overdue, may be attached by garnishment;
and money or any other thing due or belonging to the defendant
may be attached by this process before it has become payable, if its
payment or delivery does not depend upon any contingency; but
the garnishee shall not be compelled to pay or deliver the same
before the time appointed by the contract."     G. S. 1913, § 7863.

"No person or corporation shall be adjudged a garnishee in any
of the following cases:

1. By reason of any money or other thing due to the defendant,
unless at the time of the service of the summons the same is due
absolutely, and without depending on any contingency." · *   *   *
G. S. 1913, § 7864.

Hurley had valid lienable claims against the Fitzpatricks.  He
relinquished his right to enforce these liens against their property
for the interest in the trust estate given him by the trust deed.  Un-
der the trust deed he was entitled to have his claims satisfied out of the
proceeds of the property against which they were lienable, if, after
satisfying prior incumbrances, such proceeds were sufficient for that
purpose; and, if such proceeds were not sufficient for that purpose,
he was entitled to share in the general fund as a common creditor.
The trust deed gave him an absolute right to share in the trust estate
either as a preferred creditor, or as a common creditor, or as both.
His interest in the trust estate, as defined in the trust deed, became
fully vested when that deed took effect.  He then became entitled to
his proportion of the trust property, or of the proceeds thereof, and
his right thereto was absolute and did not depend upon any con-
dition or contingency within the meaning of the above statutes.  It
is true that the value of his interest could not be determined accur-
ately until the property had been converted into money, but that it
would amount to a substantial sum appeared clearly and was not
disputed.    Enough of the property had been converted into money,
prior to the service of the garnishee summons, so that Hurley's
share thereof was more than sufficient to satisfy plaintiff's claim.
If it had appeared that the garnishees were unable to determine
whether they had sufficient funds belonging to Hurley to satisfy

plaintiff's claim, the court should have continued the garnishment proceeding until the amount applicable to such claim could be determined. Duxbury v. Shanahan, 84 Minn. 353, 87 N. W. 944. The garnishees, however, made no such claim; on the contrary they admitted at all times that the funds in their possession were ample to pay plaintiff in full. But aside from this admission, they had completed their trust and determined definitely the amount due Hurley before the trial took place, and at the trial paid the amount due him into court to be disposed of as the court should direct. Plaintiff's lien attached when the garnishee summons was served; the amount impounded thereby was definitely determined at the trial, if not earlier; and the decision of the learned trial judge was clearly correct.

Order affirmed.