**Ailie RINTALA, Trustee, Plaintiff,**

v.

**Edward A. SHOEMAKER, Defendant.**

**No. 5–73 Civ. 80.**

United States District Court,
D. Minnesota,
Fifth Division.

Aug. 22, 1973.

Paul J. Louisell, Duluth, Minn., for plaintiff.

Reavill, Neimeyer, Johnson, Fredin, Killen & Thibodeau, by John J. Killen, Jr., Duluth, Minn., for defendant.

NEVILLE, District Judge.

The question presented is whether a Minnesota resident as plaintiff, suing in this court a resident of the State of Michigan as defendant on a wrongful death cause of action arising out of an automobile accident occurring in Florida, may obtain jurisdiction *quasi in rem* over defendant by garnisheeing the defendant's insurer which does business in Minnesota and most if not all states in the United States and by personal service on defendant in Michigan. Such meager case authority as exists is divided and the question has never been presented to nor decided by this court or by the Minnesota Supreme Court.

## FACTS

Plaintiff, a Minnesota resident, is a trustee for the purposes of this wrongful death action and claims that due to defendant's negligent operation of a motor vehicle in Lake Worth, Florida on January 20, 1973, her husband, a passenger in the vehicle, sustained injuries which caused his wrongful death. Plaintiff, attempting "long arm" service on defendant at his home in Michigan, served defendant with a copy of the summons and complaint and also a copy of a garnishee summons which had been served on defendant's insurer Aetna Casualty and Surety Company, the garnishee, licensed to do business in Minnesota, pursuant to Minn.Stat. § 60A.19 by delivering a copy to the Commissioner of Insurance of the State of Minnesota. Aetna in response to interrogatories served under Minn.Stat. § 571.49 requested information concerning its contractual relationship with defendant. The insurer responded with this motion to dismiss the garnishee summons and to strike the interrogatories, admitting however to having issued an automobile liability policy to defendant which was in force at the time of the Florida accident. Aetna claims the policy is not a proper subject for garnishment and that plaintiff in essence is attempting to bootstrap herself into jurisdiction when she *cannot constitutionally* acquire prop-

er in personam jurisdiction through long arm service.

Defendant moves to dismiss claiming insufficiency of service of process since he is a Michigan resident, the accident occurred in Florida and the assertion of personal jurisdiction over him by this court is a violation of due process.

It clearly appears that the only connection defendant has with the State of Minnesota is that his insurer is duly licensed to and does business here.

It is obvious that any attempt to secure in personam jurisdiction over the defendant simply by serving a summons and complaint on him at his home in Michigan is unavailing. Thus the issue for determination is whether valid quasi in rem jurisdiction has been acquired over property owned by defendant and held by the garnishee Aetna in Minnesota through the service of the garnishee summons on Aetna and the notice [1] of the pending action to Shoemaker.

The question is twofold. First, since this is a diversity case, the court must inquire whether the Minnesota Supreme Court, acting under its garnishment statutes, would classify Aetna's obligations to defend and indemnify defendant a res suitable for seizure in a quasi in rem proceeding; second, assuming such obligations are an attachable res, does the seizure conform with the requirements of due process.

1. *The Propriety of the Garnishment Under Minnesota Law*

■ The court in this diversity case is bound to follow the decisions of the Minnesota Supreme Court. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); Erie R. Co.

v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Only if the Minnesota court would find a garnishable res may this court do so. Federal Rule of Civil Procedure 64 [2] "seems to fairly indicate that this Court is to adopt both the substantive and procedural law of Minnesota in regard to garnishment proceedings." Ospina v. Vanelli, 34 F.R.D. 151, 152 (D.Minn.1964); cf. Baxter v. United Forest Products Co., 406 F.2d 1120 (8th Cir. 1969), cert. denied 394 U.S. 1018, 89 S.Ct. 1635, 23 L.Ed.2d 42 (1969). Though the exact question presented here has never been decided by the Minnesota Supreme Court, various inferences can be drawn from the many Minnesota cases dealing with garnishment of intangibles despite no clear holding on the precise issue. The federal court may resort to any persuasive data that is available by fair implication from other related adjudications or by reference to the rules and policies which the Minnesota Supreme Court has sought to apply. Cold Metal Process Co. v. McLouth Steel Corp., 126 F.2d 185 (6th Cir. 1942).

■ Garnishment is "essentially a statutory remedy." Gustafson v. Johnson, 235 Minn. 358, 373, 51 N.W.2d 108, 116 (1952). Accordingly "authorities from other states and general statements in texts have little value without reference to the statutes upon which they are based." *Id.* at 373, 51 N.W.2d at 116. In Minnesota a debt is garnishable, and for the purposes of garnishment a debt has a situs wherever the garnishee may be found and could be sued by the defendant-creditor for the debt's recovery. Starkey v. Cleveland R. Co., 114 Minn. 27, 130 N.W. 540 (1911). See Harris v. Balk, 198 U.S.

---

1. Mullane v. Central Hanover Bank & Trust, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

2. Rule 64: At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circum-

stances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought . . .. The remedies thus available include . . . garnishment . . . regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action. At least one lower court case also appears to favor Aetna.

215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905), which relied on the Minnesota case of Harvey v. Great Northern Ry. Co., 50 Minn. 405, 52 N.W. 905 (1892), in reaching its decision. In Minnesota it long has been held that the garnishment statute is remedial in nature and is to be liberally construed to protect creditors. Knudson v. Anderson, 199 Minn. 479, 272 N.W. 376 (1937).

The clarity in the case law ceases however when defining which intangibles are subject to garnishment. Some very old cases hold that garnishment of insurance policies is improper until there is a proof of loss filed. Gies v. Bechtner & Kottman, 12 Minn. 279 (1867); Smaltz Goodwin Co. v. Poppe, Inc., 172 Minn. 43, 214 N.W. 762 (1927). In Swedish-American Nat'l Bank v. Bleecker, 72 Minn. 383, 75 N.W. 740 (1898), although the court stated that a garnishment statute is remedial and should be liberally construed, 72 Minn. at 388, 75 N.W. at 741, it refused to allow garnishment of insurance proceeds due a North Dakota resident from an English insurance company licensed to do business in Minnesota. The garnishee summons was issued and served in the same manner as in this case. Aetna may well cite this case as controlling since it deals with the issue presented here.[3] Yet subsequent cases put the question in a different light and, more important, a recently enacted Minnesota statute seems to be decisive.

The major argument against a ruling that Aetna's obligations to the defendant are a garnishable res is the apparently contingent nature of those duties. Although the policy certainly includes a duty to indemnify up to the face amount of the policy for any judgment the defendant suffers as a result of an auto-mobile accident, the defendant has suffered no judgment at this time and Aetna does not owe him a liquidated sum. And it may never owe him anything on this policy except perhaps a defense. To rule that this latter duty alone is garnishable leads to the difficult problem of assigning it a value. If this duty is the only basis for jurisdiction the defendant well may argue that garnishment of this ancillary duty is simply a method to produce a judgment on the accident which may *then* cause the insurer's duty to indemnify to become due and owing.

The difficulty in attempting to fit Aetna's obligations into traditional notions of an attachable res is apparent. The New York Court of Appeals first dealt with the issue in Seider v. Roth, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966). There the court found the various duties which the insurer incurred as soon as an accident happened constituted a "debt". As such it was subject to attachment under the New York civil practice statute which provided for attachment of a debt which is past due or which is yet to become due, certainly or upon demand of the judgment debtors.[4] The *Seider* decision was criticized for its method of acquiring jurisdiction:

> "Although it recognized the contingent nature of these obligations, the court in *Seider* chose simply to ignore it. It reasoned that once the accident occurred, sufficient duties arose to bring the insurance policy within the coverage of the attachment statute."

*Note*, Minichiello v. Rosenberg: Garnishment of Intangibles—in Search of a Rationale, 64 N.W.U.L.Rev. 407, 412 (1969). Other states, interpreting their own attachment statutes, have failed to find similar obligations by insurer's to

---

3. In Morris v. Gould, Seventh District of Minnesota (1966) (unreported decision), attachment of an insurer's obligation to defend and indemnify the defendant in a motorboat accident was not allowed despite that plaintiff was a Minnesota resident, insurer was authorized to do business in Minnesota, and the accident occurred here. The Minnesota Supreme Court did not decide the issue thus this court is not controlled by the decision.

4. Minn.Stat. § 571.41 Subd. 2 (1969) appears to be even more broadly worded than New York CPLR 5201 (Subd. (a)) which was applied in *Seider*.

be an attachable res because they are contingent obligations. Housley v. Anaconda Co., 19 Utah 2d 124, 427 P.2d 390 (1967); De Rentiis v. Lewis, 106 R.I. 240, 258 A.2d 464 (1969); Howard v. Allen, 254 S.C. 455, 178 S.E.2d 127 (1970); State ex rel. Gov't Employees Ins. Co. v. Lasky, 454 S.W.2d 942 (St.L. Mo.App.1970); *Contra* Turner v. Evers, 31 Cal.App.3d Supp. 11, 107 Cal.Rptr. 390 (Super.1973).

█ Although some states have permitted attachment of contingent obligations, Brainard v. Rogers, 74 Cal.App. 247, 248, 239 P. 1095, 1096 (1925); Baumgold Bros. v. Schwarzschild Bros. Inc., 276 App.Div. 158, 93 N.Y.S.2d 658 (S.Ct.1949); the case law indicates that the general rule in Minnesota is that contingent obligations are not subject to garnishment. Murphy v. Casey, 150 Minn. 107, 184 N.W. 783 (1921); S. T. McKnight v. Tomkinson, 209 Minn. 399, 296 N.W. 569 (1941); *Cf.* Minn. Stat. § 571.43(1) (1969). The contingency must be one that controls the obligation to pay and not simply the timing or form of payment. Irwin v. McKechnie, 58 Minn. 145, 59 N.W. 987 (1894). Thus in a case where the obligation to pay is absolute but payment is subject to a contingency the court may simply continue the garnishment proceedings until the contingency is determined. National Surety Co. v. Hurley, 130 Minn. 392, 153 N.W. 740 (1915). Under these principles it would seem that Aetna's duties are contingent at this point in time since the duty to indemnify is not presently due and owing and may never become so—for example if judgment is returned for the defendant. However, it can be argued that Aetna's obligation to indemnify is absolute, contingent solely on a judgment against its insured. The *National Surety* case apparently would allow continuing jurisdiction pending judgment on the tort claim under this theory. At best, the Minnesota posture on the question so far as judicial decisions is unclear.

█ There are other cases further defining what debts are conditional and not attachable. It has been held that a *claim* under a fire insurance policy is contingent and not garnishable before furnishing sworn proof of loss. Smaltz Goodwin Co. v. Poppe, Inc., 172 Minn. 43, 214 N.W. 762 (1927).[5] More recently the Minnesota Supreme Court held that an unliquidated tort claim "under which indebtedness is contingent upon proof of liability and damage is expressly excluded from operation of the garnishment statute Minn.Stat. § 571.43 Subd. (1). Northwestern National Bank of Bloomington-Richfield v. Hilton & Assoc., 271 Minn. 564, 136 N.W.2d 646 (1965).[6] Similarly, in 1971, the Minnesota court held that an unliquidated contractual claim is contingent and not amenable to garnishment. Northwestern-National Bank of Bloomington-Richfield v. Delta Studios, Inc., 289 Minn. 202, 184 N.W.2d 3 (1971). The court noted that it was strictly applying the garnishment statute[7] and stated:

"The effect of the Minnesota garnishment statute and interpretive case law in essentially similar fact situations is to render ungarnishable an unliquidated and unlitigated claim."

5. Of course where a judgment has been rendered against the defendant the insurer's duty to indemnify becomes attachable. Mahr v. Maryland Casualty Co., 132 Minn. 336, 156 N.W. 668 (1916); Powers v. Wilson, 139 Minn. 309, 166 N.W. 401 (1918). These are perhaps the best examples of a debt fully accrued and subject for garnishment.

6. The court did not decide whether the *duty* to indemnify or the duty to defend or investigate or any other duty under a common █.

automobile liability insurance policy is or is not garnishable. It only dealt with the tort claim itself.

7. Minn.Stat. § 571.43 "No person or corporation shall be adjudged a garnishee by reason of: (1) Any money or other thing due to the judgment debtor, unless at the time of the service of the summons the same is due absolutely, and without depending on any contingency.

289 Minn. at 204, 184 N.W.2d at 4.[8] Aetna may argue that defendant Shoemaker's claims on his policy are unlitigated and unliquidated in both the tort and contract sense and thus should not be garnishable.

■■ In the above cases it is clear that the major problem the court has in finding a garnishable res was the lack of certitude that any debt would ever become owing. In the last two cases it was the lack of a judgment which the court found prevented the debt from being garnishable. This underpinning for these decisions ceased to prevent garnishment of insurance policies when Minnesota modified Minn.Stat. § 571.41 by adding Subd. 2 in 1969. Minn.Laws 1969, c. 1142, Sec. 1, eff. June 10, 1969.[9] It states:

"Subd. 2. Garnishment shall be permitted *before judgment* in the following instances only:

(1) For the purpose of establishing quasi in rem jurisdiction . . .

(c) the defendant is a nonresident individual

.   .   .   .   .   .

(2) When the garnishee and the debtor are parties to a contract of suretyship, guarantee, or insurance, because of which the garnishee *may* be held to respond to any person for the claim asserted against the debtor in the main action." [Emphasis added].

It clearly states that judgment is no longer necessary when seizing an insurance policy under which the insurer may be liable for a claim asserted against its insured.[10] At least one state court has come to the same conclusion under a statute not nearly as explicit as this one:

"We disagree with the proposition that the 'obligation to indemnify requires a valid in personam judgment against the insured,' and hold the obligation to indemnify requires only the *possibility* of a valid judgment either against the insured personally or depriving him of his property."

Turner v. Evers, 31 Cal.App.3d Supp. 11, 107 Cal.Rptr. 390 (Super.1973) (Emphasis added). One of the major criticisms of the *Seider* decision was that by disregarding a contingency in the insurance policy the court was bootstrapping itself into jurisdiction. In Minnesota the 1969 amended statute encompasses the contingency and in allowing garnishment the Minnesota court would not extend its jurisdiction beyond the intention of the legislature. The legislature's intent in modifying Minn.Stat. § 571.41 by adding Subd. 2 *after Seider* can be inferred to allow this type of procedure in

---

8. As an example of the confusion found in Minnesota case law in this area a passage from Gustafson v. Johnson, 235 Minn. 358, 51 N.W.2d 108 (1952), should be compared with the above statement:

"We do not require that the claim be liquidated. Garnishment is available . . . in tort actions for the recovery of money. It is always doubtful in what amount and whether there may be any recovery in such actions.

235 Minn. at 374, 51 N.W.2d at 117. The *Delta Studios* court apparently disavowed this passage. 289 Minn. at 206, 184 N.W.2d at 5.

9. This statute was not in effect when the above cases were decided.

10. Comment, Constitutional Law: Garnishment Without Notice and Hearing is Denial of Due Process, 54 Minn.L.Rev. 853, 855 (1970). The statute refers to the "debtor" and in this case defendant is not actually

a debtor in relation to plaintiff until a judgment is returned in plaintiff's favor. Given this problem it appears the statute is most reasonably read to encompass defendant although he is technically only a potential debtor. Otherwise the statute would only apply where the plaintiff had litigated his claim against the garnishee's creditor and made that creditor his "debtor." If so, the major point of the statute, that it provides for garnishment before judgment, would be avoided. Subd. 3 of Minn.Stat. § 571.41 addresses the problem indirectly by referring to the "parties":

In the instances where garnishment is permitted before the entry of judgment the parties for the purposes of this act will be known as judgment debtor or judgment creditor respectively.

This reference indicates that attachment prior to liquidation or final litigation of the debt is what must be contemplated by the statute.

Minnesota.[11]  It should be noted that the wording of this statute indicates that it is not intended to be a statutory direct action remedy, Watson v. Employer's Liability Assurance Corp., 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954), because it does not indicate that the insurer is to be placed in the posture of the nominal defendant.  Rather, in this case, defendant remains the party exposed to judgment.[12]

▪ The wording of the Minnesota statute also allows the court to avoid a problem which caused criticism of the *Seider* decision: the difficulty of valuing the non-contingent obligations under the insurance policy (*e.g.* duty to defend).

> Any valuation of such non contingent obligations is difficult . . . they are not likely to be worth enough to satisfy a tort judgment.  Even if the obligation to defend were regarded as non contingent, its inclusion would not make attachment feasible.  It is at least arguable that the duty to defend would be exhausted in the course of the attachment proceeding."

Comment, Garnishment of Intangibles: Contingent Obligations & the Interstate Corp., 67 Colum.L.Rev. 550, 552 (1967). The Minnesota statute simply calls for

garnishment where there is an insurance contract under which the claim asserted may ultimately be paid.[13]  Courts in states which do not have such explicit statutes have refused to allow garnishment because the insurer's duties on the policy are not transferable by the insured since the insurer's obligation is so difficult to value.  Howard v. Allen, 254 S.C. 455, 176 S.E.2d 127, 130 (1970).[14]

▪ Prior to the 1969 amendment to Minn.Stat. § 571.41 the major hurdle to expanding quasi in rem jurisdiction was Minn.Stat. § 571.43:

> "No person or corporation shall be adjudged a garnishee by reason of:
>
> (1) Any money or other thing due to the judgment debtor, unless at the time of the service of the summons the same is due absolutely, and without depending on any contingency."

Although this statute is still in force it is clearly superseded by Minn.Stat. § 571.41 Subd. 2, first, because that subdivision refers specifically to insurance policies and contemplates the precise situation presented in this case and second, the exception in Minn.Stat. § 571.43(1) speaks of the "judgment debtor" and there can be no judgment debtor until

---

11. Process was served upon garnishee Aetna in this case pursuant to Minn.Stat. § 60A.19 (1965).  Under Subdivision 2 of this statute a procedure is provided for garnishment of insurance companies through service upon the commissioner of insurance.  This is the procedure followed here.  A comprehensive reading of Minn.Stat. § 60A.19 indicates that it contemplates the accomplishment of quasi in rem jurisdiction over a foreign insurance company.  When read in the còntext of the 1969 amendment to Minn.Stat. § 571.41 garnishment of an insurer's obligation to its insured prior to judgment on the underlying claim against the insured becomes proper.

12. The *Watson* case does provide an example of the Supreme Court's willingness to allow a practical remedy against a non-resident insurer where a state resident may have suffered due to the negligence of the non-resident insured.  The Court made it clear that attaching the insurance company for a potential debt of its policy holder is not totally repugnant to due process.  Of course this case restricted its holding to accidents oc-

curring within the forum.  See discussion in Minichiello v. Rosenberg, 410 F.2d 106, 109–110 (2d Cir. 1968).

13. An overly strict reading of this statute would seem to indicate that the only insurance contract garnishable is one which will fulfill the "claim" in the main action.  Thus if the claim exceeded the insurance policy it could not be attached.  This reading would ignore the liberal use of amendments in Minnesota practice and create an unnecessary and perhaps unfair distinction among cases based on the amount of damages pleaded.  A more reasonable reading would be that an insurance contract is attachable if *all or any part* of it may be used to ultimately satisfy the judgment.  Of course the statute may not be read to allow a recovery in excess of the face amount of the policy.

14. The fact that the insurance policy is not garnishable in defendant's state of residence, Michigan, or where the accident occurred, Florida, is not relevant here.  *Cf.* Barker v. Smith, 290 F.Supp. 709 (DNY 1968).

**1052**

defendant suffers a judgment. *Cf.*, Minn.Stat. § 571.41 Subd. 3. Minn.Stat. § 571.41 Subd. 2 refers to garnishment prior to judgment as occurred in this case. Thus by its own terms, and because the amendment to Minn.Stat. § 571.41 is more recent and more specific, Minn.Stat. § 571.43(1) does not apply.

This court is of the opinion that this statute, Minn.Stat. § 571.41 Subd. 2, alone would be dispositive of the issue to the Minnesota Supreme Court. However, that court's attitude toward protecting its own residents and allowing them a local forum is also persuasive of what it would do with this issue. The Minnesota Supreme Court's interpretations of the state's long arm statutes provide the best example of this attitude. In Hunt v. Nevada State Bank, 285 Minn. 77, 172 N.W.2d 292, cert. denied sub nom. Burke v. Hunt, 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970), the court held that Minnesota statutes are to be read to provide the most comprehensive jurisdiction over foreign insurers possible. 285 Minn. at 96, 172 N.W.2d at 307–308. The Minnesota court is always alert to find a state interest to provide a basis for asserting jurisdiction. It has held that Minnesota residency of the plaintiff is such an interest. Perhaps the best example of this is found in Hagberg v. Colonial & Pacific Frigidways, Inc., 279 Minn. 396, 157 N.W.2d 33 (1968). There an outstate corporation employed a Minnesota resident. The employment contract was entered into in Iowa and was to be performed only in part in Minnesota. The employee was injured in the course of his employment in Montana and, although the claim sounded essentially in tort, the Minnesota

court found the employment contract provided a nexus with Minnesota so as to allow jurisdiction. Clearly there could have been no finding of tortious conduct in Minnesota. Yet the effect of the tortious conduct was to be felt here since the injured workman returned here. Accordingly, the Minnesota Supreme Court found a way to exercise jurisdiction. Yet it assured itself of fairness to the employer by finding that the employer's business was localized here because it did a substantial amount of business here. This finding appeared necessary for Workmen's Compensation purposes, but it also made it clear that forcing the employer to defend in Minnesota was not unfair. It should be noted that Aetna does a substantial amount of business in this state also.

In the present case the plaintiff is a Minnesota resident.[15] It is this state which must protect and care for the plaintiff in the event of indigency. It is this state's services which plaintiff uses. This court believes this factor would weigh heavily with the Minnesota Supreme Court.[16] In Mid-continent Freight Lines, Inc. v. Highway Trailer Industries, Inc., 291 Minn. 251, 190 N.W.2d 670 (1971), the court refused to allow Minnesota long arm jurisdiction to a non-resident third party plaintiff who sought to implead a non-resident third party defendant. The court gave perhaps the best indication of how it views its responsibility to its residents in this passage:

"Had it been plaintiff, a Minnesota resident, which commenced the action against [the third party defendant], we would have little difficulty in holding that our courts have jurisdiction

15. In another context the United States Supreme Court recognized the validity of a state's interest in protecting its own residents. Alaska Packers Ass'n v. Industrial Accident Comm'n, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1939).

16. In one case the United States Supreme Court squarely held that mere residence of the plaintiff in Texas would not alone allow Texas law to influence a contract executed

and carried out in Mexico. Home Ins. Co. v. Dick, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930). But the case did not hold that the garnishment procedure used against the insurer was improper. The Court specifically refused to pass on that question and simply held that to lengthen the statute of limitations under which the contract was made by reference to Texas law violated due process on the facts before it.

over [the third party defendant], because in such a case we would have a clear interest in providing a forum for the action."

291 Minn. at 256, 190 N.W.2d at 674. Minnesota has no less interest under the facts in the case before this court, even though plaintiff has alternative fora.

For the above reasons, and placing greatest emphasis upon Minn. Stat. § 571.41 Subd. 2 this court must hold Aetna's duties to defendant are a properly garnishable res in Minnesota.[17]

### 2. *Constitutionality*

Where the state court rule is challenged on constitutional grounds, even in diversity cases, this court must be guided by the decisions of the Supreme Court and the appellate courts of the United States rather than the state court. Aftanase v. Economy Baler Co., 343 F.2d 187 (8th Cir. 1965); Ark-La Feed & Fertilizer Co. v. Marco Chemical Co., 292 F.2d 197 (8th Cir. 1961). Accordingly, the opinions of the New York Court of Appeals on constitutional matters have only persuasive merit before this court. That court did not deal with the constitutionality of garnishment of insurance obligations in *Seider* but did pass on the question in Simpson v. Loehmann, 21 N.Y.2d 305, 287 N.Y.S.2d 633, 234 N.E.2d 669 (1967). A divided court found valid quasi in rem jurisdiction because (1) the insurer's obligations to its insured was a res (2) there was effective seizure of the res (3) there was proper notice to the defendant, and (4) the insurer was present in the state so the debt also was present in the state. The court found this procedure proper under the principle enunciated in Harris v. Balk, 198 U.S. 215, 227, 25 S.Ct. 625, 49 L.Ed. 1023 (1905), that a debt may be attached where the debtor may be found.

The federal courts in New York were soon called upon to decide the constitutionality of the New York procedure. In Podolsky v. Devinney, 281 F.Supp. 488 (SDNY, 1968), a district court held the garnishment procedure unconstitutional as a violation of due process. The court simply could not find an attachable res prior to a judgment against the insured and feared that since New York did not allow a limited appearance if the insured came to New York to defend he could suffer a personal judgment. If he refused to come to New York to defend the garnishee would suffer a default judgment without having any real chance to argue the merits of the case. The court held this unattractive choice a violation of due process and ruled that New York had exercised its jurisdiction without sufficient minimum contacts or adequate procedural safeguards. Aetna asserts that this case should control the case at bar.

However, the Second Circuit Court of Appeals did not endorse *Podolsky*.[18] It provided procedural limits on the New York garnishment of insurers and held the procedure constitutional. Minichiello v. Rosenberg, 410 F.2d 106 (2d Cir. 1968), cert. denied 396 U.S. 844, 90 S.Ct. 69, 24 L.Ed.2d 94, rehearing denied 396 U.S. 949, 90 S.Ct. 370, 24 L.Ed.2d 254 (1969). There the Court refused to dismiss complaints of New York residents in automobile negligence actions against nonresident defendants where jurisdiction was predicated solely on the attachment of the defendants' interests in liability insurance policies issued by companies doing business in New York though not necessarily New York corporations. The court looked upon the New York procedure as simply a direct action statute and placed great reliance on the fact that New York was plaintiff's residence. This alone provided enough con-

---

17. This court is well aware of the cases where federal courts have read Minnesota jurisdictional statutes narrowly only to have their interpretations rejected by subsequent Minnesota Supreme Court cases. *E. g.*, Atkins v. Jones & Laughlin Steel Co., 258 Minn. 571,

580, 104 N.W.2d 888, 893–894 (1960), rejecting the holding of Mueller v. Steelcase, Inc., 172 F.Supp. 416, 419–420 (D.Minn.1959).

18. *Podolsky* was also distinguished in Jarvik v. Magic Mountain Corp., 290 F.Supp. 998 (S.D.N.Y.1968).

tact to allow a constitutional attachment of an obligation owed the defendants by insurers present in New York. This decision was made by the Second Circuit sitting en banc.

■ Therefore if jurisdiction is properly acquired over the insurer there is quasi in rem jurisdiction over out-of-state residents. Beja v. Jahangiri, 453 F.2d 959, 961 (2d Cir. 1972). It seems clear here that jurisdiction over Aetna is proper. Aetna does a substantial amount of business in this state and has registered with the Commissioner of Insurance appointing him its agent for service of process. Minn.Stat. § 60A.19 (1968). This business may be used as the basis for jurisdiction over Aetna such that "traditional notions of fair play and substantial justice" are not offended. International Shoe Co. v. Washington, 326 U.S. 310, 316, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The interest of the state of Minnesota is aptly summarized by the *Minichiello* court:

> "The state's interest in protecting its residents is as great as in the case of nonresidents injured within the state."

410 F.2d at 110, *Cf.* Watson v. Employers Liability Assurance Corp., *supra.*

Although Aetna's presence in Minnesota appears to provide the necessary minimum contacts to allow garnishment of its obligations to the defendant there still remains a question of fairness of the overall procedure. Other federal courts have placed limits on the exercise of this type of jurisdiction to make its exercise fair to both the insurer and the insured. These limits seem reasonable to this court and without them the court would have serious doubts as to the constitutionality of such a garnishment.

■ First, proper notice must be given to the defendant-insured to give him an adequate opportunity to defend his property. Harris v. Balk, *supra,* Mullane v. Central Hanover Bank & Trust Co., *supra.*[19] This was done here when defendant was served in Michigan with summons and complaint and a copy of the garnishee summons which had been served on Aetna.

■ Second, it would be improper to expose the defendant to any loss greater than the amount of his insurance policy. Most policies contain a cooperation clause whereby an insured must cooperate with his insurer in the defense of any claim. If he fails to do so the insurer need not indemnify. This clause means that defendant will have to defend in Minnesota or he may lose his right to be indemnified at all. If in so doing he would be liable for a judgment in excess of the policy limit what began

19. A question might be raised whether under the facts at bar recent Supreme Court holdings require a hearing prior to garnishment of property. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed. 2d 349 (1969); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Quasi in Rem Jurisdiction and Due Process Requirements, 82 Yale L.J. 1023 (1973). The essential theory of the above cases is that due process requires notice to the defendant and the opportunity for a hearing prior to the judicial seizure of his property. In the present case the defendant received notice but there does not appear to have been an opportunity for a *Sniadach* hearing. However, in *Sniadach* the Supreme Court excluded from its hearing requirement "extraordinary situations" where a hearing may be delayed until after property is seized. This is the so-called *Ownbey* exception—after Ownbey v. Morgan. 256 U.S. 94, 110–112, 41 S.Ct. 433, 65 L.Ed. 837 (1921). Although there is discussion as to the extent to which the *Ownbey* exception should apply, e. g. Lebowitz v. Forbes Leasing & Finance Corp., 326 F.Supp. 1335 (E. D.Pa.1971), aff'd 456 F.2d 979 (3d Cir. 1971), cert. denied 409 U.S. 843, 93 S.Ct. 42, 34 L. Ed.2d 82 (1972), it is clear that it does apply where the property belongs to a nonresident. That is the *Ownbey* fact situation. In the context of the case at hand it also should be noted that the garnished property was *solely* intended for the purpose for which it was garnished. It could not be used otherwise by the defendant. This is quite unlike the *Sniadach* situation where the garnished property consisted of wages which the defendant needed to live on.

as quasi in rem jurisdiction would have been effectively translated into personal jurisdiction. This result appears possible under Minn.R.Civ.P. 4.04 which prohibits limited appearances in quasi in rem actions.[20] New York had a similar rule but there the Court of Appeals simply held that it did not apply in *Seider* type cases. Thus in New York even though the defendant proceeds with the defense on the merits he does not become personally exposed. Simpson v. Loehman, per curiam opinion denying reargument, 21 N.Y.2d 990, 290 N.Y.S. 2d 914, 238 N.E.2d 319 (1968). It was on the holding of that case that the *Minichiello* court distinguished *Podolsky*. See also Jarvik v. Magic Mountain Corp., *supra*. There is no analogous decision in Minnesota, but this court feels basic considerations of fairness would impell the Minnesota Supreme Court to provide such a limit on its exercise of quasi in rem jurisdiction. In any event, this court is of the opinion that under the facts of this case not to allow a limited appearance would violate due process. Various authorities can be cited for the propriety of denying a limited appearance in a quasi in rem action, e.g. United States v. Balanovski, 236 F.2d 298 (2d Cir. 1956), cert. denied 352 U.S. 968, 77 S.Ct. 357, 1 L.Ed.2d 322 (1957); Campbell v. Murdock, 90 F.Supp. 297 N.D.Ohio, 1950); Anderson v. Benson, 117 F.Supp. 765 (D.Neb.1953); 1A Barron & Holtzoff, Federal Practice & Procedure (Wright ed.), § 370.1, and other authorities, have held that to deny a limited appearance and force the defendant to choose between defending his property and exposing himself to in personam jurisdiction is a denial of due process, *e.g.*, McQuillen v. National Cash Register Co., 112 F.2d 877 (4th Cir.), cert. denied, 311 U.S. 695, 61 S.Ct. 140, 85 L. Ed. 450 (1940); Salmon Falls Mfg. Co. v. Midland Tire & Rubber Co., 285 F. 214 (6th Cir. 1922); Cheshire National Bank v. Jaynes, 224 Mass. 14, 112 N.E.

500 (1916). On these facts the cases favoring a limited appearance are most persuasive. To deny a limited appearance here would convert quasi in rem jurisdiction into in personam jurisdiction because of the prevalence of cooperation clauses and the well known fact that attorneys for the insurer handle this type of litigation. *Cf.* Tjepkema v. Kenney, 31 A.D.2d 908, 298 N.Y.S.2d 175, app. dismissed 24 N.Y.2d 942, 302 N.Y.S.2d 580, 250 N.E.2d 68 (1969). Moreover, Aetna's counsel has admitted to the fact that it does business in all fifty states. Conceivably, it is subject to the type of quasi in rem jurisdiction asserted here in all those states—or someday may be. Thus the very nature of the garnishee makes this quite a different situation from, for example, a case where the defendant owns a piece of land in a state other than his own. In the event defendant contests this case on the merits it would violate due process to render judgment in excess of the policy limits and expose him to an in personam judgment when on these facts it is clear that the usual long arm jurisdiction over him could not be accomplished. In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Supreme Court indicated that the limit on personal jurisdiction is that there must be some act by which the *defendant purposefully avails* himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, 357 U.S. at 253, 78 S.Ct. 1228. Defendant has done no such voluntary act and thus to apply personal jurisdiction over him would violate due process.

Third, the *Minichiello* court assured that this type of quasi in rem jurisdiction was not unduly inconvenient to either the defendant or the insurer by limiting its applicability to residents of the forum. There are several cases where *Seider* type jurisdiction has been denied when the plaintiff was not a resi-

---

**20.** Advisory Committee Note–1968, Minn.R.Civ.P. Rule 4.04.

dent of the forum. E.g., Vaage v. Lewis, 29 A.D.2d 315, 288 N.Y.S.2d 521 (1968); Farrell v. Piedmont Avia. Inc., 411 F.2d 812 (2d Cir. 1969). In *Farrell* quasi in rem jurisdiction was denied where the only connection with New York was that it was the resident of the plaintiff's administrator. The *Minichiello* court discussed the issue and held:

> Where neither party is a resident and the accident was out of state, a refusal to exercise jurisdiction would be a permissible application of *forum non conveniens*.

(citing cases) 410 F.2d at 110, f. 6.

The fear is that unless this limit is placed on *Seider* type jurisdiction blatant forum shopping would be possible since many insurance companies, including Aetna, do business in all fifty states. Further, the essential connection between the forum state and the accident at all, the connection which provides the forum state with a recognizable and protectable interest, is that the forum is the residence of the plaintiff. This limit on *Seider* jurisdiction is not only reasonable but it limits any inconvenience which the insurance company might suffer. The only additional state in which garnishment might be had is the residence of the plaintiff. Finally, it should be noted that although there was actual fear in the New York cases of forum shopping because of alleged liberality of New York jury verdicts there can be no such fear here. Suffice it to say that here plaintiff, and her deceased husband, are Minnesota residents, and there is no indication of forum shopping.

Given these procedural safeguards *Seider* type jurisdiction cannot be found to violate due process. The only remaining contention as to its unconstitutionality is that it may, if accepted in many states, become an unreasonable burden on interstate commerce. Judge

Anderson, dissenting in Minichiello v. Rosenberg, *supra*, raised this point. 410 F.2d at 117. But there has been no showing here that any undue burden has yet occurred or ever will. On the facts of this case Aetna is simply exposed to an action in one more jurisdiction than it would be otherwise. This certainly is no intolerable burden on it or a similarly situated garnishee. Moreover, with the *Seider* procedure accepted in New York over five years ago, and presently being tested in other jurisdictions, it cannot fairly be said that Aetna had no expectation that this type of action might not be accepted in Minnesota—or other states before its policy with defendant expired.[21] Even if the *Seider* approach were not accepted elsewhere, Aetna certainly was prepared to defend here if defendant had had an accident in Minnesota. This court is not persuaded that there is any unreasonable burden on interstate commerce through assertion of *Seider* jurisdiction, nor that Aetna's valid expectations have been ignored. *See*: International Milling Co. v. Columbia Transp. Co., 292 U.S. 511, 520, 54 S.Ct. 797, 78 L.Ed. 1396 (1934); Erlanger Mills v. Cohoes Fibre Mills, Inc., 239 F.2d 502, 507 (4th Cir. 1956). If there is a long range impact on interstate insurance business that issue may be raised when and if it occurs.

This court is aware that other states have refused to follow the *Seider* approach. Most of these decisions were made by interpreting the particular state statute involved, *e.g.* Housley v. Anaconda Co., 19 Utah 2d 124, 427 P.2d 390 (1967); Howard v. Allen, 254 S.C. 455, 176 S.E.2d 127 (1970); Gov't Employees Ins. Co. v. Lasky, 454 S.W.2d 942 (St.L.Mo.App.1970). The one federal case which denies *Seider* garnishment does so on the basis of a reading of the Vermont attachment statute. Ricker v. Lajoie, 314 F.Supp. 401 (D.Vt.1970). No case has found the *Seider* procedure

---

21. By affidavit Aetna indicates that it issued the policy to defendant in Michigan on January 6, 1973.

unconstitutonal when limited as discussed above. *E.g.*, De Rentiis v. Lewis, 106 R.I. 240, 258 A.2d 464, 465 (1969). Recently, a California court accepted the *Seider* procedure. Turner v. Evers, 31 Cal.App.3d Supp. 11, 107 Cal.Rptr. 390 (Super.1973).

The United States Supreme Court has had opportunities to find the *Seider* procedure unconstitutional and has denied to take certiorari. Victor v. Lyon Assoc. Inc., 21 N.Y.2d 695, 287 N.Y.S.2d 424, 234 N.E.2d 459 appeal dismissed for want of a substantial federal question, sub nom. Hanover Ins. Co. v. Victor, 393 U.S. 7, 89 S.Ct. 44, 21 L.Ed.2d 385 (1968); Minichiello v. Rosenberg, 410 F.2d 106 (2d Cir. 1968), cert. denied 396 U.S. 844, 90 S.Ct. 69, 24 L.Ed.2d 94 (1969). It is especially noteworthy that the Supreme Court failed to find a substantial federal question in the *Lyons* case.

The constitutional objection basically resolves to a question of fairness. Minimum contacts are established because the insurer is present in this state and registered to do business here. Thus the property it holds may be garnished here. Minnesota has an interest because it is the residence of the plaintiff. The *Minichiello* court stated:

". . . there has been, as we have recently noted, ' "a movement away from the bias favoring the defendant," in matters of personal jurisdiction "toward permitting the plaintiff to insist the defendant come to him" when there is a sufficient basis for doing so . . .' "

*Minichiello, supra,* 410 F.2d at 110, quoting Buckley v. New York Post Corp., 373 F.2d 175, 181 (2d Cir. 1967). On the facts of this case it does not seem unfair to require Aetna and defendant to defend here to the limit of the insurance coverage.

A separate order has been entered.