## A. E. HOLMAN v. GENERAL INSURANCE COMPANY OF AMERICA.
## MINNESOTA MUSKIES, INC., BY EDWARD BERGQUIST, COURT-APPOINTED RECEIVER, APPELLANT.

231 N. W. 2d 81.

June 6, 1975—No. 45150.

*Wagner, Johnston, Falconer & Lindstrom* and *David K. Hackley,* for appellant.

*Larkin, Hoffman, Daly & Lindgren* and *Robert J. Hennessey,* for respondent plaintiff.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Mary Jeanne Coyne,* and *O. C. Adamson II,* for respondent garnishee.

Heard before Sheran, C. J., and Rogosheske and Yetka, JJ., and considered and decided by the court en banc.

PER CURIAM.

Appeal from a judgment of the Hennepin County District Court.

A bond was issued May 29, 1967, binding the Minnesota Muskies, Inc. (Muskies), Larry P. Shields, then president and majority shareholder, and his wife, Patricia, as principals, and General Insurance Company of America (General) as surety, to the American Basketball Association (ABA) in the sum of $100,000. Conditions of performance were agreed to, the meeting of which would render the obligation assumed null and void. The initial bond expired May 29, 1968; a second bond of similar description was issued prior to that date for a term ending March 31, 1969.

On May 29, 1967, the Muskies and General entered into a collateral security agreement whereby the Muskies delivered a $50,000 certificate of deposit to General to be held by General as security against losses and expenses it might suffer by reason of its suretyship. General was to retain the certificate of deposit until its liability on the original bond, or any future bond it might execute on the Muskies' behalf, ended. General was entitled to appropriate the security for expense purposes without obligation to return any balance that might remain until all its possible further liability, actual or threatened, terminated.

Respondent Holman was the Muskies' general manager in 1968. In May of that year, he sued the Muskies for breach of contract (the main action). Although the Muskies answered and counterclaimed because of subsequent failure to post agreed-to security, the trial court ordered these pleadings stricken on March 31, 1970. On April 15, 1970, a judgment of $52,141.67 was entered in Holman's favor.

While the main action was pending, on July 14, 1969, Holman served a garnishment summons on General. Service of notice of this summons was made on William Mullin, then the Muskies'

attorney, on July 16, 1969.[1] On the same date, Holman sued General directly to determine Holman's rights under the bond. General denied liability in the direct action by alleging that the bond itself had expired. General also sued the Muskies and the Shieldses for indemnity.

On June 10, 1969, L. 1969, c. 1142, became effective. In essence, this chapter abolished prejudgment garnishment save in certain specified instances.

General procured time extensions on its garnishment disclosure until on or about July 30, 1970. It served its disclosure on August 3, 1970. The exact interpretation to be accorded the disclosure is a matter of dispute.

General argues that its disclosure stated that, with respect to the ABA, no moneys were absolutely due and owing under the terms of the bond and that, with respect to the Muskies, General had a safekeeping receipt for the certificate of deposit and, moreover, asserted its own lien or claim to those funds pursuant to the terms of the collateral security agreement made part of the disclosure. General's consistent position has been that at no time relevant to this appeal have moneys been absolutely due and owing to the Muskies.

No oral disclosure took place. No supplemental complaint issued. In Holman's action against General, both parties moved for summary judgment. Holman also moved for a summary judgment against the ABA directing it to satisfy the judgment entered April 15, 1970, by resort to the bond in its possession. Holman, Edward J. Bergquist, receiver for the Muskies, General, and the ABA all appeared at a February 19, 1971, hearing. On April 14, 1971, the trial court determined that the bond was penal and not available to creditors such as Holman. The court also found that the certificate of deposit, in its then liquidated form, was garnishable by Holman. Appeal was taken by Bergquist. On

---

[1] The efficacy of this service is contested. For reasons appearing below, we do not reach the issue.

April 3, 1973, we vacated the judgment and remanded for further proceedings.

On April 26, 1974, a judgment awarding the garnished collateral to respondent Holman, less certain expenses incurred by General, was entered. The claims of Holman, the ABA, and the Muskies with respect to the bond were rejected.

Constitutional and statutory defects in the garnishment proceeding are asserted; appellant also contests trial court findings of waiver, estoppel, and laches. We hold only that reversal is required because the collateral was not garnishable.

1. The garnishment disclosure demonstrates that the sums held by General were not "due absolutely, and without depending on any contingency" to the Muskies on July 14, 1969. Minn. St. 571.43(1). Therefore, the certificate of deposit was not subject to garnishment. In no sense can General be said to have been estopped, to have been guilty of laches, or to have waived its rights.

It is correct that the bond, found by the trial court to be penal and running only in favor of the ABA,—findings uncontested on appeal—expired March 31, 1969. The trial court found that through its disclosure General claimed an interest in the certificate of deposit funds only to the extent of its attorneys fees; that because the penal bond was no longer in effect, the Muskies were then and there entitled to a refund of their moneys; and that General's disclosure of the collateral security agreement constituted a disclosure of moneys absolutely due and owing to the Muskies.

The determinative findings are those relating to the collateral security agreement, which the trial court construed to be only a claim by General for attorneys fees. We do not agree.

Paragraph Sixth of the collateral security agreement provides:

"In case of the termination of the liability of the Surety

[General], without loss or damage as aforesaid,[2] on said bond and any other bond or bonds which the Surety may have issued, before or after said bond, at the request of or on behalf of the Depositor [the Muskies], and competent evidence is furnished to that effect, the said collateral shall be returned thereupon to the Depositor * * *."

General's position has been that it remained potentially liable under the bond until the statute of limitations barred further liability on a date subsequent to July 14, 1969.[3] See, Minn. St. 541.05(1); Independent School District No. 2 v. Burley, 169 Minn. 240, 211 N. W. 7 (1926).

---

[2] Paragraph Second of the collateral security agreement provides: "In case the Surety, by reason or in consequence of having executed said bond or any other bond or bonds which it has executed or may hereafter execute at the request of or on behalf of the Depositor shall, at any time, sustain or incur any liability, or be threatened with any liability, or be put to any loss, costs, charges, suits, damages, counsel fees, or expenses of whatever kind or nature, the Surety shall have at any time or times thereafter full right, power and authority, without demand or notice, to sell, assign and deliver the whole or any part of said collateral or any substituted or additional collateral, at public or private sale, at its option, and without advertisement or notice to the Depositor, and with the right to be purchaser, itself, at such sale or sales, freed and discharged from any equity of redemption, and appropriate all the proceeds, or such part of the same as may be necessary in order to protect itself against any loss from having executed the aforesaid bond or bonds, and after deducting all legal or other costs and expenses of such sale and all loss, costs, charges, fees and expenses, as aforesaid, shall return the remainder of said collateral or the proceeds of sale, if any, to the Depositor, or to any person or persons, legally authorized to receive them, as soon as all possible further liability of the Surety has terminated."

Paragraph First provides: "* * * [T]he Surety shall have the right in its discretion to retain said collateral, as hereinafter provided, until the liability of the Surety on account of having executed said bond shall cease and determine * * *."

[3] Passage of that date, March 31, 1975, since submission of the case to this court does not alter disposition of this appeal.

The crucial issue is whether General was free from "all possible further liability"[4] on July 14, 1969. It was not, nor could it be, freed any sooner than the statute barred suit against the Muskies, as such a suit would relate to that period of time in which General agreed to serve as surety to the Muskies-ABA bond.

The funds represented by the certificate of deposit were not "due absolutely, and without depending on any contingency," Minn. St. 571.43(1), from General to the Muskies on July 14, 1969. The res was not then garnishable. See Northwestern Nat. Bank v. Delta Studios, Inc. 289 Minn. 202, 184 N. W. 2d 3 (1971), a case antedating the 1969 amendments to c. 571 in terms of applicable law, but which accurately reflects the rule to be followed in this case.[5]

2. Amended by L. 1969, c. 1142, § 1, Minn. St. 571.41, subd. 2(2),[6] has no application here. Instead, we look to Minn. St. 571.43 and its prohibitions. This is so because the suretyship agreement with which we are concerned is not one "because of which the garnishee may be held to respond to *any* person for

[4] See footnote 2, *supra*.

[5] See, also, Northwestern Nat. Bank v. Hilton & Associates, 271 Minn. 564, 136 N. W. 2d 646 (1965); Smaltz Goodwin Co. v. Poppe, Inc. 172 Minn. 43, 214 N. W. 762 (1927). Compare Powers v. Wilson, 139 Minn. 309, 166 N. W. 401 (1918), and Mahr v. Maryland Cas. Co. 132 Minn. 336, 156 N. W. 668 (1916), with the foregoing cases.

But cf. Rintala v. Shoemaker, 362 F. Supp. 1044 (D. Minn. 1973), discussed in Comment, 1 Wm. Mitchell L. Rev. 161. The theory upon which that case is based and its possible applicability here have not been argued. Because of Rintala's complexities, we set it aside for consideration on another occasion.

[6] "Subd. 2. Garnishment shall be permitted before judgment in the following instances only:

\* \* \* \* \*

"(2) When the garnishee and the debtor are parties to a contract of suretyship, guarantee, or insurance, because of which the garnishee may be held to respond to any person for the claim asserted against the debtor in the main action."

the claim asserted against the debtor in the main action." (Italics supplied.) We must abide by the finding of the trial court that only the ABA can enforce the bond: General would be required to respond only to the ABA, not "to any person for the claim asserted against the debtor in the main action."

And as we have held with respect to application of § 571.43, at the time of the garnishment there was no absolute obligation on General's part to pay the Muskies. The obligation that did exist was contingent not merely because of the passage of time or the form of payment: There was the additional and controlling contingency that, all funds being exhausted in litigation and damages, General would never owe the Muskies anything.[7] Only upon termination of General's potential liability under the bond would the remainder of the collateral fund, if any there be, lose its contingent status, become absolutely due and owing to the Muskies, now represented by appellant Bergquist as receiver, and become subject to a properly executed garnishment.

It is not necessary to reach the other issues presented.

Reversed and remanded with directions to enter judgment accordingly.

---

[7] But cf. Gustafson v. Johnson, 235 Minn. 358, 374, 51 N. W. 2d 108, 117 (1952): "It is always doubtful what amount and whether there may be any recovery in such [unliquidated tort claim] actions." Gustafson must be limited to its facts since its scope is considerably narrowed by Northwestern Nat. Bank v. Delta Studios, Inc. 289 Minn. 202, 184 N. W. 2d 3 (1971), and Northwestern Nat. Bank v. Hilton & Associates, 271 Minn. 564, 136 N. W. 2d 646 (1965).

We have said that the general rule is this: The garnishment statute is to be strictly applied in favor of the garnishee. Henderson v. Northwest Airlines, Inc. 231 Minn. 503, 43 N. W. 2d 786 (1950). See, also, Knudson v. Anderson, 199 Minn. 479, 272 N. W. 376 (1937).