JEFFREY D. SAVCHUK v. RANDAL RUSH.
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, GARNISHEE.*

245 N. W. 2d 624, 272 N. W. 2d 888.

September 10, 1976—No. 45556.

---

* Vacated and remanded, 433 U. S. 902, 97 S. Ct. 2964, 53 L. ed. 2d 1086 (1977).

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp &
Brennan, James F. Roegge,* and *O. C. Adamson II,* for appellants.

*Schermer, Schwappach, Borkon & Ramstead, John D. Mariani,*
and *Richard I. Diamond,* for respondent.

*Milavetz & Associates, Robert J. Milavetz,* and *Karen L. Ives,*
for Minnesota Trial Lawyers Association, amicus curiae, seek-
ing affirmance upon the rehearing.

Heard before Sheran, C. J., and Otis, Todd, MacLaughlin, and
Scott, JJ., and considered and decided by the court en banc.

SHERAN, CHIEF JUSTICE.

Appeal by defendant, Randal Rush, and garnishee, State Farm
Mutual Automobile Insurance Company (State Farm), from an
order by the district court granting plaintiff's motion to file and
serve a supplemental complaint and denying appellants' motion
to dismiss the complaint. We affirm the decision of the trial
court for these reasons:

(1)   Minn. St. 571.41, subd. 2, was enacted by the legislature

to permit garnishment of an insurer's obligation to an insured, even though not due absolutely and without contingency.

(2) Rule 4.04(2), Rules of Civil Procedure, which provides in part, "When quasi in rem jurisdiction [is] obtained, a party defending such action thereby submits personally to the jurisdiction of the court," applies in cases where jurisdiction is obtained pursuant to § 571.41, subd. 2, only to the extent of the defendant's policy limits.

(3) Possible injustice to the defendant in situations where jurisdiction is obtained pursuant to § 571.41, subd. 2, can be controlled by application of the doctrine of forum non conveniens.

The case arose out of a single-car accident which occurred January 13, 1972, in Elkhart, Indiana. The accident involved a car driven by Rush and owned by his father, in which Jeffrey D. Savchuk was a passenger. The Rush car was insured by State Farm. Rush and Savchuk were both residents of Indiana at the time of the accident. Savchuk, a senior in high school when the accident occurred, moved to Minnesota with his parents in June 1973 and is now an employed and married resident of this state.

The instant action was commenced May 28, 1974, when Savchuk served a garnishment summons on State Farm. Service was made by delivery of a copy of the summons to the commissioner of insurance for the state of Minnesota, pursuant to Minn. St. 60A.19. A copy of the garnishment summons, along with copies of the summons and complaint, was also served personally on Rush in Indiana. The complaint alleged negligence and sought $125,000 in damages.

In response to the garnishment summons, State Farm disclosed pursuant to § 571.49 that nothing was due and owing Rush as judgment debtor. Savchuk then moved the trial court for permission to file a supplemental complaint making the garnishee, State Farm, a party to the action pursuant to § 571.51. Rush and State Farm responded by moving for dismissal on the following grounds: Lack of subject-matter jurisdiction, lack of jurisdiction over the defendant, insufficiency of process, and insufficiency

of service of process. Since the jurisdictional challenge raised by the motion to dismiss also raised a question as to the constitutionality of the application on these facts of § 571.41, the attorney general was invited to intervene. That invitation was declined. The respective motions were then heard by the court. His order granting Savchuk's motion for leave to file a supplemental complaint and denying the motion of Rush and State Farm to dismiss precipitated this appeal.

Two main issues are presented: (1) Is the obligation of an insurance company to defend and indemnify a nonresident insured under an automobile liability insurance policy a garnishable res in Minnesota for the purpose of obtaining quasi-in-rem jurisdiction when the incident giving rise to the action occurs outside Minnesota but the plaintiff in the action is a resident of Minnesota? (2) If the obligation of an insurance company to defend and indemnify its insured is a garnishable res, does its seizure and the resultant quasi-in-rem jurisdiction conform with constitutional requirements of due process?

■ Appellants contend that an insurance company's obligation to defend and indemnify its insured cannot constitute a res garnishable under Minn. St. 571.41, subd. 2, because such an obligation is not "due absolutely, and without depending on any contingency," as required by § 571.43(1).[1] In effect, appellants

---

[1] Minn. St. 571.41, subd. 2, reads in part: "Garnishment shall be permitted before judgment in the following instances only:

"(1)  For the purpose of establishing quasi in rem jurisdiction

"(a)  when the defendant is a resident individual having departed from the state with intent to defraud his creditors, or to avoid service, or keeps himself concealed therein with like intent; or

"(b)  the defendant is a resident individual who has departed from the state, or cannot be found therein, or

"(c)  the defendant is a nonresident individual, or a foreign corporation, partnership or association."

Minn. St. 571.43(1) reads: "(1) [No person or corporation shall be adjudged a garnishee by reason of:] (1) Any money or other thing due to the judgment debtor, unless at the time of the service of the summons the same is due absolutely, and without depending on any contingency."

argue that the prejudgment garnishment sanctioned by subd. 2 of Minn. St. 571.41 can be obtained only when the "due absolutely, and without * * * any contingency" language of § 571.43(1) is first satisfied.

It seems to us that the intent of the legislature in enacting § 571.41, subd. 2, was to specify a limited number of instances in which garnishment (and quasi-in-rem jurisdiction) would be available *before* judgment, regardless of whether the debt on which the garnishment was predicated was due absolutely.

Several reasons support this conclusion. First, the language of § 571.41, subd. 2, itself indicates that the test for determining the validity of prejudgment garnishment when the garnishee and debtor are parties to a contract of insurance is not whether the debt is due absolutely but rather whether the garnishee *"may* be held to respond" for the claim asserted against the debtor. State Farm's *potential* liability is conceded here, and *potential* liability is all that subd. 2 requires.[2]

Second, § 571.41, subd. 2, is both more recent in origin and more specific in language than § 571.43.[3] Because we perceive an

---

[2] In construing a statute less explicit than the one here in question, the court in Turner v. Evers, 31 Cal. App. Supp. 3d 11, 18, 107 Cal. Rptr. 390, 395 (1973), stated: "* * * We disagree with the proposition that the 'obligation to indemnify requires a valid in personam judgment against the insured,' and hold the obligation to indemnify requires only the *possibility* of a valid judgment either against the insured personally or depriving him of his property." (Italics supplied.)

See, also, Rintala v. Shoemaker, 362 F. Supp. 1044 (D. Minn. 1973).

[3] Section 571.43 has remained substantially unchanged since 1957; subd. 2 of § 571.41 was added in 1969. Subd. 2 refers specifically to insurance contracts and seems to contemplate precisely the situation presented here. The fact that § 571.43 speaks of "judgment debtor," while § 571.41, subd. 2, applies in a prejudgment context also suggests a reason for being guided by the latter provision. Note, however, that § 571.41, subd. 3, does indicate that § 571.41, subd. 2, parties are properly to be referred to as judgment debtor and judgment creditor, even though no judgment has yet been obtained.

irreconcilable conflict between these two statutory provisions, § 571.41, subd. 2, controls.[4] Minn. St. 645.26.

Third, our interpretation of § 571.41, subd. 2, as permitting prejudgment garnishment and the establishment of quasi-in-rem jurisdiction in the circumstances here presented is consistent with two often-stated positions of this court—namely, our interest in providing a forum to residents of this state and our determination in long-arm cases to extend the jurisdiction of our courts to the maximum limits consistent with due process.[5]

We therefore hold that under § 571.41, subd. 2, an automobile insurance company's obligation to defend and indemnify its insured is a res subject to prejudgment garnishment for the purpose of obtaining quasi-in-rem jurisdiction when the incident giving rise to the action occurs outside the state of Minnesota but the plaintiff in the action is a resident of Minnesota.

■ The test for determining the constitutionality of the prejudgment garnishment procedure authorized by Minn. St. 571.41, subd. 2, is threefold: (1) Proper notice must be given to the defendant-insured, affording him adequate opportunity to defend his property; (2) the defendant cannot be exposed to liability greater than the amount of his insurance policy; (3) the procedure may be utilized only by residents of the forum state. Minichiello v. Rosenberg, 410 F. 2d 106, 117 (2 Cir. 1968, 1969); Rintala v. Shoemaker, 362 F. Supp. 1044 (D. Minn. 1973).

---

[4] See, Comment, 1 Wm. Mitchell L. Rev. 161, 176, for an analysis of the statute which reconciles the insurance provision of § 571.41 with the contingency provisions of § 571.43. Our view of the two enactments as irreconcilably in conflict was the view taken by the late Judge Philip Neville in Rintala v. Shoemaker, *supra*.

[5] See, B & J Mfg. Co. v. Solar Industries, Inc. 483 F. 2d 594 (8 Cir. 1973) (applying Minnesota law); State ex rel. Nelson v. Nelson, 298 Minn. 438, 216 N. W. 2d 140 (1974); Franklin Mfg. Co. v. Union Pacific R. Co. 297 Minn. 181, 210 N. W. 2d 227 (1973); Mid-Continent Freight Lines, Inc. v. Highway Trailer Industries, Inc. 291 Minn. 251, 190 N. W. 2d 670 (1971); Hunt v. Nevada State Bank, 285 Minn. 77, 172 N. W. 2d 292 (1969), certiorari denied sub nom. Burke v. Hunt, 397 U. S. 1010, 90 S. Ct. 1239, 25 L. ed. 2d 423 (1970).

Plaintiff was a resident of the state at the time this action was commenced,[6] and proper notice was given.[7] The constitutional issue therefore reduces to a question of defendant's potential liability if the procedure authorized by subd. 2 of § 571.41 is permitted. Appellants argue that Rule 4.04(2), Rules of Civil Procedure, which states in part that "[w]hen quasi in rem jurisdiction [is] obtained, a party defending such action thereby submits personally to the jurisdiction of the court," means that a defendant in Rush's position[8] would find himself exposed to potentially unlimited personal liability in an action in which the plaintiff originally could have obtained only quasi-in-rem jurisdiction. Because of Rule 4.04(2), appellants argue, quasi-in-rem jurisdiction, with liability limited to the policy amount, is transformed into personal jurisdiction with potential liability extended beyond the policy limits.

If appellants correctly state the effect of Rule 4.04(2) in these circumstances, it is obvious that due process would be violated. Rintala v. Shoemaker, 362 F. Supp. 1044, 1054; Podolsky v. Devinney, 281 F. Supp. 488 (S. D. N. Y. 1968). The underlying question here, however, is not the *effect* of Rule 4.04(2), but whether in fact the rule applies to a case of this kind.

New York was the first state to permit a procedure for obtaining jurisdiction similar to the procedure invoked here. Seider

---

[6] Application of Minn. St. 571.41, subd. 2, must be limited to plaintiffs who are residents of the forum state, since without this connection the state would lack sufficient meaningful contact with the suit to justify the exercise of jurisdiction. Farrell v. Piedmont Aviation, Inc. 411 F. 2d 812 (2 Cir. 1969).

[7] Mullane v. Cent. Hanover Bank & Trust Co. 339 U. S. 306, 70 S. Ct. 652, 94 L. ed. 865 (1950), established the notice requirement.

[8] Most automobile insurance policies, including, apparently, the one here, contain a clause which requires the insured to cooperate with the insurer in the defense of any claim. If the insured fails to cooperate, the insurer need not indemnify. The practical effect of the clause means that defendants like Rush must defend in Minnesota or risk losing the right to be indemnified. Rintala v. Shoemaker, 362 F. Supp. 1044, 1054; Comment, 1 Wm. Mitchell L. Rev. 161, 180.

v. Roth, 17 N. Y. 2d 111, 269 N. Y. S. 2d 99, 216 N. E. 2d 312 (1966). New York also had a rule similar to Rule 4.04(2), but when the issue of the rule's applicability was raised, the New York Court of Appeals simply held that it did not apply in Seider-type cases. Simpson v. Loehmann, 21 N. Y. 2d 990, 290 N. Y. S. 2d 914, 238 N. E. 2d 319 (1968) (per curiam opinion denying reargument). Thus, in New York, even though the defendant proceeds with the defense on the merits, he does not bcome personally exposed. New Hampshire has reached a similar conclusion. Forbes v. Boynton, 113 N. H. 617, 313 A. 2d 129 (1973). Today we do likewise.

Basic considerations of fairness underlie our decision. The United States Supreme Court has indicated that a defendant must act to purposefully avail himself of the privilege of conducting activities in the forum state before personal jurisdiction over him may be properly asserted. Hanson v. Denckla, 357 U. S. 235, 78 S. Ct. 1228, 2 L. ed. 2d 1283 (1958). Defendant Rush had engaged in no such voluntary activity; personal jurisdiction over him could not be justified. Plaintiff's reduction of his claim to $50,000, the policy limits, is an implicit recognition of this fact.

But to say that *personal* jurisdiction would not be justified, and to hold, as we do, that Rule 4.04(2) has no application in cases where jurisdiction is obtained pursuant to Minn. St. 571.41, subd. 2, is not to say that *no* jurisdiction over the defendant can be maintained. On the contrary, considerations of fairness suggest the need for quasi-in-rem jurisdiction obtainable via a prejudgment garnishment procedure like that permitted by § 571.41, subd. 2. In cases of this kind, the insurer controls the defense of the case. Simpson v. Loehmann, 21 N. Y. 2d 305, 287 N. Y. S. 2d 633, 234 N. E. 2d 669 (1967). Minimum contacts sufficient to provide a constitutional basis for the attachment and quasi-in-rem (as distinguished from personal) jurisdiction can be found in the fact that the insurer is present in the state, registered to do business and doing business here, and in the state's legitimate

interest in protecting its residents and providing them with a forum in which to litigate their claims.[9] Rintala v. Shoemaker, 362 F. Supp. 1044, 1057; Forbes v. Boynton, 113 N. H. 617, 623, 313 A. 2d 129, 132.

We therefore hold that due process is not violated when jurisdiction is obtained pursuant to § 571.41, subd. 2, provided that (1) proper notice is given to the defendant-insured, adequate to give him opportunity to defend his property; (2) that the defendant-insured's liability is limited to the applicable policy limits of his insurance contract; and (3) that the plaintiff in the action is a resident of the state at the time the action is commenced.

■ Appellants' argument that the procedure authorized by § 571.41, subd. 2, constitutes a direct action against the insurer was not raised below. The defendant, not the insurer, is the party sued. There is nothing in the statute which suggests that the insurer should be named as a defendant. Rintala v. Shoemaker, 362 F. Supp. 1044, 1051.

We recognize that other states have rejected the procedure we approve.[10] We further recognize that some critics view Seid-

---

[9] If a forum is not provided, and the plaintiff is thus denied an opportunity to recover, the state may wind up as the "insurer," paying through its welfare and social assistance programs for the care of an individual injured by the insured. As was stated in Rintala v. Shoemaker, 362 F. Supp. 1044, 1052, the plaintiff in this case is a Minnesota resident, and "[i]t is this state which must protect and care for the plaintiff in the event of indigency [and] this state's services which plaintiff uses."

[10] Ricker v. Lajoie, 314 F. Supp. 401 (D. Vt. 1970); Howard v. Allen, 254 S. C. 455, 176 S. E. 2d 127 (1970); State ex rel. Government Employees Ins. Co. v. Lasky, 454 S. W. 2d 942 (Mo. App. 1970); Housley v. Anaconda Co. 19 Utah 2d 124, 427 P. 2d 390 (1967); Tessier v. State Farm Mutual Ins. Co. 458 F. 2d 1299 (1 Cir. 1972) (interpreting Massachusetts law); Johnson v. Farmers Alliance Mutual Ins. Co. 499 P. 2d 1387 (Okla. 1972); De Rentiis v. Lewis, 106 R. I. 240, 258 A. 2d 464 (1969); Kirchman v. Mikula, 258 So. 2d 701 (La. App. 1972); Sykes v. Beal, 392 F. Supp. 1089 (D. Conn. 1975) (interpreting Connecticut law); Robinson v. O. F. Shearer & Sons, Inc. 429 F. 2d 83 (3 Cir. 1970) (interpreting Federal maritime and Pennsylvania law).

er-type jurisdiction as a solution which creates more problems than it solves.[11] We limit our discussion of these problems to the following observations:

The potential hardship on defendants who may be required to come long distances to defend claims legitimately brought by Minnesota plaintiffs is reduced by the availability of convenient transportation and by the fact that in many cases the defendant's testimony can be obtained by deposition. Where this is not possible, the hardship and expense of travel will ordinarily be no greater for the defendant than it would be for the injured party should jurisdiction be refused.

A quasi-in-rem judgment against the defendant would apparently not work an estoppel against the defendant if the plaintiff attempts to sue again outside the state of Minnesota to recover amounts beyond the policy limits. Minichiello v. Rosenberg, 410 F. 2d 106, 112; Note, 65 Harv. L. Rev. 818, 834. Any hardship to the defendant arising out of a potential second suit against him is no more than has always existed in quasi-in-rem actions. Often, as here, a second suit will be impossible because the statute of limitations has run in the only available alternate forum. Ordinarily, a second suit against a remote defendant whose liability insurance has been exhausted would seem unlikely.

Finally, and most significantly, if jurisdiction is technically proper under § 571.41, subd. 2, but it nonetheless involves incon-

---

[11] The most persistent and prolific critic is Professor David D. Siegel, who, since 1966, has written on Seider in annual supplementary commentaries to N. Y. Civ. Prac. § 5201 (McKinney Supp. 1975). Other critical commentary has appeared in Rosenberg, *One Procedural Genie Too Many or Putting Seider Back Into Its Bottle,* 71 Col. L. Rev. 660; Stein, *Jurisdiction by Attachment of Liability Insurance,* 43 N. Y. U. L. Rev. 1075; Note, 8 B. C. Ind. & Com. L. Rev. 147; Comment, 16 Buffalo L. Rev. 769; Comment, 67 Col. L. Rev. 550; Note, 71 Dickinson L. Rev. 653; Note, 64 Nw. U. L. Rev. 407; Note, 43 St. John's L. Rev. 58; Comment, 11 San Diego L. Rev. 504; Note, 19 Stanford L. Rev. 654; Comment, 5 Sw. U. L. Rev. 417; Comment, 1 Wm. Mitchell L. Rev. 161.

490

venience for the defendant which outweighs the plaintiff's interest in a Minnesota forum and other relevant factors, then the trial court in its discretion can always grant a motion to dismiss on the grounds of forum non conveniens. Willoughby v. Hawkeye-Security Ins. Co. 291 Minn. 509, 189 N. W. 2d 165 (1971). In considering such a motion to dismiss, the trial judge would be justified in conditioning his ruling upon the willingness of the plaintiff to satisfy his claims against the defendant upon exhaustion of the policy limits.[12]

For the reasons stated, we conclude that it was not unfair on these facts to require defendant and State Farm to defend this action in Minnesota, and the decision of the trial court is therefore affirmed.

Affirmed.

OTIS, JUSTICE (dissenting).

This is a case wherein two residents of Indiana were involved in an automobile accident in Indiana. One of the drivers (Rush) had purchased an automobile liability policy from State Farm Mutual Automobile Insurance Company. A year and a half after the accident the other Indiana resident (Savchuk) left that state and moved to Minnesota, whereupon he commenced this lawsuit against Rush for injuries suffered in the accident. As Minnesota courts could not constitutionally assert personal jurisdiction over Rush, Hanson v. Denckla, 357 U. S. 235, 78 S. Ct. 1228, 2 L. ed. 2d 1283 (1958),[1] Savchuk sought to acquire quasi-in-rem jurisdiction.[2] However, Rush has no property in Minnesota. Consequently, Savchuk served a garnishment summons upon State

---

[12] Imposition of such a condition would be consistent with the policy expressed in Rintala v. Shoemaker, *supra,* and consonant with our view that this type of jurisdiction should be limited so as to make its exercise fair to both the insurer and the insured.

[1] Rush did not commit any "act by which [he] purposefully avail[ed him]self of the privilege of conducting activities within [Minnesota], thus invoking the benefits and protections of [our] laws." Hanson v. Denckla, 357 U. S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. ed. 2d 1283, 1298 (1958).

[2] See, Pennoyer v. Neff, 95 U. S. 714, 24 L. ed. 565 (1877).

Farm in an attempt to garnish any debt due and owing Rush by State Farm. In support of his action, Savchuk relies upon Minn. St. 571.41, subd. 2, relevant portions of which read:

"Subd. 2. Garnishment shall be permitted before judgment in the following instances only:

"(1) For the purpose of establishing quasi in rem jurisdiction

\* \* \* \* \*

"(c) the defendant is a nonresident individual, or a foreign corporation, partnership or association.

"(2) When the garnishee and the debtor are parties to a contract of suretyship, guarantee, or insurance, because of which the garnishee may be held to respond to any person for the claim asserted against the debtor in the main action."

It is not disputed that Rush is a nonresident individual; thus, subd. 2(1)(c) is satisfied and this case is a proper case for the exercise of quasi-in-rem jurisdiction.[3] It is also not disputed that State Farm and Rush are parties to a contract of insurance within the meaning of subd. 2(2). The question is whether, and to what extent, any obligation owed by State Farm can provide a means by which Savchuk can obtain quasi-in-rem jurisdiction over Rush.

Quasi-in-rem jurisdiction over a nonresident by the service of a garnishment summons on the defendant's nationwide insurer is a creature of Seider v. Roth, 17 N. Y. 2d 111, 269 N. Y. S. 2d

---

[3] Subd. 2(1) is merely procedural, defining the types of defendants over which the exercise of quasi-in-rem jurisdiction is proper. Thus, a court must assert personal jurisdiction over a resident defendant who can be found within the state, and cannot proceed quasi in rem. Of course, subd. 2(1) does not say that quasi-in-rem jurisdiction can be asserted over defendants there listed in all cases, for an additional element is needed—something to garnish, i. e., property located within this state. "If the non-resident have no property in the State, there is nothing upon which the tribunals can adjudicate." Pennoyer v. Neff, 95 U. S. 714, 723, 24 L. ed. 565, 569.

99, 216 N. E. 2d 312 (1966). As the majority notes, the Seider procedure has been held improper as a matter of Federal maritime law[4] as well as of the law of almost all the states which have considered it.[5] Only an inferior court in one other state has adopted it.[6] Commentary has been highly critical.[7] Even in the state of its birth, the procedure remains only because of the opinion of Judge Charles D. Breitel, in which Judge Bergan concurred, in Simpson v. Loehmann, 21 N. Y. 2d 305, 287 N. Y. S. 2d 633, 234 N. E. 2d 669 (1967), the case which reaffirmed Seider. Judge Breitel, appointed to the New York Court of Appeals after Seider, and replacing one of the judges who was in the 4-3 majority in that case, and Judge Bergan, who had dissented in Seider, cast the deciding votes in Simpson for the following reason:

"* * * Only a major reappraisal by the court, rather than the accident of a change in its composition, would justify the overruling of that precedent. Yet the theoretical unsoundness of the *Seider* case and the undesirable practical consequences of its rule require some comment if only, perhaps, to hasten the day of its overruling or its annulment by legislation.

"It is the most tenuous of nominalist thinking that accords the

---

[4] Robinson v. O. F. Shearer & Sons, Inc. 429 F. 2d 83 (3 Cir. 1970).

[5] Kirchman v. Mikula, 258 So. 2d 701 (La. App. 1972); State ex rel. Government Employees Ins. Co. v. Lasky, 454 S. W. 2d 942 (Mo. App. 1970); Johnson v. Farmers Alliance Mutual Ins. Co. 499 P. 2d 1387 (Okla. 1972); Jardine v. Donnelly, 413 Pa. 474, 198 A. 2d 513 (1964); De Rentiis v. Lewis, 106 R. I. 240, 258 A. 2d 464 (1969); Howard v. Allen, 254 S. C. 455, 176 S. E. 2d 127 (1970); Housley v. Anaconda Co. 19 Utah 2d 124, 427 P. 2d 390 (1967). See, also, Tessier v. State Farm Mutual Ins. Co. 458 F. 2d 1299 (1 Cir. 1972); Kirchman v. Mikula, 443 F. 2d 816 (5 Cir. 1971); Sykes v. Beal, 392 F. Supp. 1089 (D. Conn. 1975); Ricker v. Lajoie, 314 F. Supp. 401 (D. Vt. 1970).

[6] Turner v. Evers, 31 Cal. App. 3d Supp. 11, 107 Cal. Rptr. 390 (1973). The decision cited in the majority opinion, Forbes v. Boynton, 113 N. H. 617, 313 A. 2d 129 (1973), is discussed *infra*.

[7] See footnote 11 in the majority opinion.

status of an asset, leviable and attachable, to a contingent liability to defend and indemnify under a public liability insurance policy.

* * * * *

"Accordingly, I concur to affirm but only because the institutional stability of a court is more important than any single tolerable error which I may believe it has committed." 21 N. Y. 2d 314, 287 N. Y. S. 2d 640, 234 N. E. 2d 674.

Some of the undesirable practical consequences have already arisen. Thus, New Hampshire has adopted the rule that if the non-resident defendant lives in a state which has adopted Seider —i.e., New York—then that defendant's insurer can be garnished in New Hampshire if the insurer does business there. Forbes v. Boynton, 113 N. H. 617, 313 A. 2d 129 (1973).[8] On the other hand, if the defendant lives in a state which has rejected Seider—e.g. Connecticut—then his insurer cannot be garnished. Robitaille v. Orciuch, 382 F. Supp. 977 (D. N. H. 1974). In Vaage v. Lewis, 29 App. Div. 2d 315, 288 N. Y. S. 2d 521 (1968), New York was presented with a case in which a Norwegian resident attempted to garnish in New York the insurer of a North Carolina defendant with respect to an accident which took place in North Carolina. It was held that allowing garnishment in that case would violate the principles of forum non conveniens and due process.[9] In light of the fact that most of our sister states which have considered Seider have rejected it, that the com-

---

[8] In Forbes the New Hampshire Supreme Court stated: "We are not holding that the Seider rule is to be applied generally to all cases of foreign motorists insured by a company with an office in this State and licensed to do business in New Hampshire. We are merely holding that under the circumstances of this case in a suit by a resident of New Hampshire against a resident of New York where the Seider rule prevails the trial court properly denied the defendant's motion to dismiss plaintiff's action." 113 N. H. 624, 313 A. 2d 133.

[9] See, also, Nationwide Mutual Ins. Co. v. Vaage, 265 F. Supp. 556 (S. D. N. Y. 1967).

mentary is uniformly critical, that a majority of the court which spawned Seider now believes it to be in error, and mindful of its potentially undesirable consequences, I would decline to adopt it in Minnesota. Whether or not it is authorized by § 571.41, subd. 2(2), in my opinion it is unconstitutional as applied to the defendant in this case.

The majority opinion limits the use of the Seider procedure to residents of Minnesota. This is probably constitutionally required.[10] As Judge Earl Larson said in Adkins v. Northfield Foundry & Machine Co. 393 F. Supp. 1079, 1081 (D. Minn. 1974):

"One of the principal reasons to limit *Seider* type jurisdictions is that without such limitations, blatant forum shopping would be possible. * * * Further, this limitation is required to give the forum State a recognizable and protectable interest and to prevent an unfair burden that might be placed upon both the nonresident defendant and its insurance company."

In Rintala v. Shoemaker, 362 F. Supp. 1044, 1056 (D. Minn. 1973), the late Judge Philip Neville expressed the reasons behind this limitation:

"The fear is that unless this limit is placed on *Seider* type jurisdiction blatant forum shopping would be possible since many insurance companies, including Aetna, do business in all fifty states. Further, the essential connection between the forum state and the accident at all, the connection which provides the forum state with a recognizable and protectable interest, is that the forum is the residence of the plaintiff. This limit on *Seider*

---

[10] Farrell v. Piedmont Aviation, Inc. 411 F. 2d 812 (2 Cir. 1969), affirming 295 F. Supp. 228 (S. D. N. Y. 1968); Vaage v. Lewis, 29 App. Div. 2d 315, 288 N. Y. S. 2d 521 (1968); Varady v. Margolis, 303 F. Supp. 23 (S. D. N. Y. 1968); Public Admr. of County of New York v. Unimar Shipping Co. Ltd. 401 F. Supp. 313 (S. D. N. Y. 1975); Rintala v. Shoemaker, 362 F. Supp. 1044 (D. Minn. 1973); Adkins v. Northfield Foundry & Machine Co. 393 F. Supp. 1079 (D. Minn. 1974).

jurisdiction is not only reasonable but it limits any inconvenience which the insurance company might suffer. The only additional state in which garnishment might be had is the residence of the plaintiff. * * *

"* * * On the facts of this case Aetna is simply exposed to an action in one more jurisdiction than it would be otherwise. This certainly is no intolerable burden on it or a similarly situated garnishee."

In the case at bar, plaintiff and defendant were both residents of Indiana when this accident occurred.[11] At that time, under the limitation on Seider, Rush and State Farm were amenable to suit in only one jurisdiction—Indiana. If Savchuk had been a Minnesota resident at that time suit could have been brought in only two states—Indiana and Minnesota. However, if jurisdiction is permissible in this case Rush and State Farm are amenable to suit in all 50 states.

If a motorist in another state drives negligently and injures a Minnesotan, a strong case can be made that this state's interests are sufficiently great to allow our courts to use the Seider procedure for obtaining jurisdiction over the case. As Judge Neville put it, such a motorist "is simply exposed to an action in one more jurisdiction than [he] would be otherwise." 362 F. Supp. 1056. However, allowing a potential plaintiff to move to this state after his cause of action has arisen and to invoke Seider to bring the case to Minnesota means that a plaintiff has a choice of 50 jurisdictions in which to sue. Such a result in my opinion violates due process.[12] Rush did not injure one who was a Min-

---

[11] Plaintiff's statement of the case indicates that all of the witnesses and records, as well as a treating physician, are located in Indiana, except for plaintiff's family and two Minnesota physicians who, presumably, treated him after he moved to Minnesota.

[12] In the only reported case where this issue was presented, Robitaille v. Orciuch, 382 F. Supp. 977 (D. N. H. 1974), jurisdiction was denied on other grounds. See the discussion of Robitaille and Forbes v. Boynton, 113 N. H. 617, 313 A. 2d 129 (1973), *supra*.

nesota resident on the day of the accident. He should not be forced to defend himself in a Minnesota court.

Under the policies of Schwartz v. Consolidated Freightways Corp. 300 Minn. 487, 491, 221 N. W. 2d 665, 668 (1974)—advancement of Minnesota's governmental interests and application of the better rule of law—Minnesota's comparative negligence law, and not Indiana's contributory negligence law, will apply. Thus, if Rush injures another Indiana resident in Indiana, and that person is able to establish residence in a new jurisdiction, he may use Seider to bring the defendant in and defend, and avoid Indiana's contributory negligence law. Under the majority opinion, if my next-door neighbor is negligently injured on my property he is free to move to any other state where my homeowners insurer transacts business and force me to defend there.

The majority opinion's answer is that the defendant is free to move to dismiss on grounds of forum non conveniens. However, that presupposes jurisdiction, which I cannot accept.[13]

Accordingly, I would reverse and hold that Minn. St. 571.41, subd. 2(2), is unconstitutional as applied to this case. It would not then be necessary to reach the issue of whether Seider is to become the rule of this state.

### UPON REHEARING

After a rehearing, the following opinion was filed on October 20, 1978.

---

[13] "The district courts of this state may fairly exercise their discretion in declining to accept jurisdiction of transitory causes of action brought here by citizens or noncitizens of this state who are nonresident when it fairly appears that it would be more equitable that the cause of action be tried in some other available court of competent jurisdiction." Johnson v. Chicago B. & Q. R. Co. 243 Minn. 58, 79, 66 N. W. 2d 763, 776 (1954).

Considered and decided by the court en banc.

WAHL, JUSTICE

On remand from the United States Supreme Court for further consideration in light of Shaffer v. Heitner, 433 U. S. 186, 97 S. Ct. 2569, 53 L. ed. 2d 683 (1977). For the reasons below, we distinguish Shaffer v. Heitner, *supra,* and hold that the assertion of jurisdiction pursuant to Minn. St. 571.41, subd. 2, as limited by our earlier decision in Savchuk v. Rush, 311 Minn. 480, 245 N. W. 2d 624 (1976), vacated and remanded, 433 U. S. 902, 97 S. Ct. 2964, 53 L. ed. 2d 1086 (1977), is consistent with the standards established by International Shoe Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. ed. 95 (1945), and its progeny.

The facts are as stated in the earlier decision. Plaintiff, Jeffrey Savchuk, was injured in a single-car accident in Elkhart, Indiana, on January 13, 1973. At the time of the accident, both Savchuk, a senior in high school, and the driver of the car, defendant Randal Rush, were Indiana residents. In June 1973, Savchuk moved with his parents to Minnesota, where he became employed, was married and continues to reside. The personal injury action was commenced in district court, Hennepin County, on May 28, 1974. Savchuk served a garnishment summons on garnishee State Farm Insurance pursuant to Minn. St. 571.41, subd. 2[1] and Minn. St. 60A.19, subd. 1(3). Defendant Rush, still an In-

---

[1] Minn. St. 571.41, subd 2, states: "Notwithstanding anything to the contrary herein contained, a plaintiff in any action in a court of record for the recovery of money may issue a garnishee summons before judgment therein in the following instances only:

\* \* \* \* \*

"(b) If the court shall order the issuance of such summons, if a summons and complaint is filed with the appropriate court and either served on the defendant or delivered to a sheriff for service on the defendant not more than 30 days after the order is signed, and if, upon application to the court it shall appear that:

\* \* \* \* \*

"(2) The purpose of the garnishment is to establish quasi in rem jurisdiction and that

\* \* \* \* \*

"(b) defendant is a nonresident individual, or a foreign corporation,

diana resident, was personally served with a copy of the garnishment summons and copies of the summons and personal injury complaint.

By order, the district court denied the motion of Rush and State Farm to dismiss for lack of jurisdiction and insufficient process. They appealed to this court and the order was affirmed. Savchuk v. Rush, 311 Minn. 480, 245 N. W. 2d 624 (1976).

Upholding the constitutionality of Minnesota's garnishment provision, Minn. St. 571.41, subd. 2, this court found that procedure "consistent with two often-stated positions of this court—namely, our interest in providing a forum to residents of this state and our determination in long-arm cases to extend the jurisdiction of our courts to the maximum limits consistent with due process." 311 Minn. 485, 245 N. W. 2d 628. The statute was interpreted to satisfy three due process requirements: the provision of adequate notice to defendant-insured; a limitation of liability to insurance policy amounts; and restriction of use to plaintiffs who reside in the forum state. 311 Minn. 485, 245 N. W. 2d 628.

On June 24, 1977, the United States Supreme Court vacated that judgment and remanded the case for further consideration in light of Shaffer v. Heitner, 433 U. S. 186, 97 S. Ct. 2569, 53 L. ed. 2d 683 (1977), which requires, in particular, that "all assertions of state court jurisdiction must be evaluated according to the standards set forth in International Shoe Co. and its progeny." 433 U. S. 212, 97 S. Ct. 2584, 53 L. ed. 2d 703.

The issue now before this court is whether Minnesota's asser-

partnership or association.

"(3) The garnishee and the debtor are parties to a contract of suretyship, guarantee, or insurance, because of which the garnishee may be held to respond to any person for the claim asserted against the debtor in the main action.

"(4) The creditor has been unable to serve upon the debtor the summons and complaint in the main action because the debtor has been inaccessible due to residence and employment in buildings where access is restricted."

tion of jurisdiction over out-of-state defendants pursuant to Minn. St. 571.41, subd. 2, as limited by this court in Savchuk, satisfies the due process standards set forth in International Shoe Co. and Shaffer.

In Shaffer, a nonresident plaintiff filed a shareholder's derivative suit in Delaware state court, naming as defendants Greyhound (a Delaware corporation), Greyhound Lines (its wholly-owned subsidiary incorporated in California), and 28 present or former officers or directors of one or both of the corporations, none of the last being Delaware residents. The complaint alleged that the individual defendants had violated their duties to the corporation and its subsidiary by permitting activities in Oregon which made the company liable for substantial antitrust litigation, damages, and criminal contempt fines. The Delaware court obtained jurisdiction by sequestering, via stop-transfer orders, Greyhound stock owned by the individual defendants.[2]

On appeal to the Delaware Supreme Court, one constitutional challenge to the jurisdiction-by-sequestration procedure was side-stepped:

"There are significant constitutional questions at issue here but we say at once that we do not deem the rule of *International Shoe* to be one of them. * * * The reason, of course, is that jurisdiction under § 366 remains, as it was in 1963, *quasi in rem* founded on the presence of capital stock here, not on prior contact by defendants with this forum." Greyhound Corporation v.

---

[2] 8 Del. Code Ann. § 169 makes Delaware the situs of ownership of stock in Delaware corporations; the rule in the other 49 states places that situs in the state of the owner's residence. Shaffer v. Heitner, 433 U. S. 186, 218, 97 S. Ct. 2569, 2588, 53 L. ed. 2d 683, 707 (1977) (Stevens, J., concurring).

Sequestration is a seizure of property used to compel the personal appearance of the nonresident defendant. See, 10 Del. Code Ann. § 366. Although liability is limited to the value of the property seized, potential liability here was $1.2 million. 433 U. S. 192, note 7, 97 S. Ct. 2574, 53 L. ed. 2d 690.

Heitner, 361 A. 2d 225, 229 (Del. 1976), reversed sub nom. Shaffer v. Heitner, 433 U. S. 186, 97 S. Ct. 2569, 53 L. ed. 2d 683.

The United States Supreme Court overruled this categorical in rem/in personam jurisdiction analysis:

"* * * [I]n order to justify an exercise of jurisdiction *in rem*, the basis for jurisdiction must be sufficient to justify exercising 'jurisdiction over the interests of persons in a thing.' The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum contacts standard elucidated in International Shoe [Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. ed. 95 (1945)]." 433 U. S. 207, 97 S. Ct. 2582, 53 L. ed. 2d 699.

"* * * For in cases such as Harris [v. Balk, 198 U. S. 215 (1905)] and this one, the only role played by the property is to provide the basis for bringing the defendant into court. Indeed, the express purpose of the Delaware sequestration procedure is to compel the defendant to enter a personal appearance. In such cases, if a direct assertion of personal jurisdiction over the defendant would violate the Constitution, it would seem that an indirect assertion of that jurisdiction would be equally impermissible." 433 U. S. 209, 97 S. Ct. 2583, 53 L. ed. 2d 701.

Evaluating the sequestration procedure by that standard, the court held Delaware's assertion of jurisdiction to be inconsistent with the due process "minimum contacts" limitation on state power. It found the asserted state interest in supervising the management of local operations to be imperfectly served by the sequestration procedure, which is not expressly limited to corporate fiduciaries and does not even guarantee jurisdiction over all such figures.[3] 433 U. S. 214, 97 S. Ct. 2585, 53 L. ed. 2d 704. Though such an interest might support the application of Delaware law to the controversy, choice of law does not necessarily

---

[3] Heitner failed to secure jurisdiction over seven of the individual defendants since Delaware law does not require directors to own stock. 8 Del. C. § 141 (b).

establish jurisdiction over the parties. 433 U. S. 215, 97 S. Ct. 2586, 53 L. ed. 2d 704. Accordingly, judgment was reversed.

Shaffer generally directs the application of International Shoe Co. standards to all assertions of state court jurisdiction, 433 U. S. 212, 97 S. Ct. 2584, 53 L. ed. 2d 703, but the necessary consequences for jurisdiction under Minn. St. 571.41, subd. 2, are not clear. That statute embodies the rule of Seider v. Roth, 17 N. Y. 2d 111, 269 N. Y. S. 2d 99, 216 N. E. 2d 312 (1966). It provides jurisdiction over a nonresident defendant via garnishment of a contractrual obligation, the obligation of the insurance company (doing business in this state) to defend and indemnify the nonresident, insured defendant. Under the statute, as interpreted in our earlier opinion, the nonresident defendant is guaranteed notice, his liability is limited to the policy's face amount and the procedure may be utilized only by residents of the forum state. Savchuk v. Rush, *supra.*

Although Seider v. Roth-type jurisdiction is undoubtedly the most highly controversial and significant contemporary application of the doctrine of quasi-in-rem jurisdiction, it does not appear in the historical discussion in Shaffer.[4]

Since Shaffer, New York courts have split over its implications for Seider v. Roth-type jurisdiction. Several trial courts have held such jurisdiction to be precluded by Shaffer: Torres v. Townmotor Division of Caterpillar, Inc. 457 F. Supp. 460 (E.D. N.Y. 1977) [cited in Alford v. McGaw, 61 App. Div. 2d 504, 402 N. Y. S. 2d 499 (1978)] ; Rodriguez v. Wolfe, 93 Misc. 2d 364, 401 N. Y. S. 2d 442 (1978) ; Attanasio v. Ferre, 93 Misc.

[4] The United States Supreme Court has never considered the constitutionality of the procedure, twice declining to review appellate decisions sustaining the exercise of Seider v. Roth jurisdiction: Minichiello v. Rosenberg, 410 F. 2d 106 (2 Cir. 1968) affirmed on rehearing en banc, 410 F. 2d 117, certiorari denied, 396 U. S. 844, 90 S. Ct. 69, 29 L. ed. 2d 94 (1969); Victor v. Lyon Assoc. Inc. 21 N. Y. 2d 695, 287 N. Y. S. 2d 424, 234 N. E. 2d 459 (1967), appeal dismissed for want of a substantial Federal question, sub nom., Hanover Ins. Co. v. Victor, 393 U. S. 7, 88 S. Ct. 44, 21 L. ed. 2d 94 (1968).

2d 661, 401 N. Y. S. 2d 685 (1977); Datz v. Umansky, 92 Misc. 2d 285, 399 N. Y. S. 2d 412 (1977); Kennedy v. Deroker, 91 Misc. 2d 648, 398 N. Y. S. 2d 628 (1977). Other trial courts have held that such jurisdiction does not offend due process: O'Connor v. Lee-Hy Paving Corp. 437 F. Supp. 994 (E.D.N.Y. 1977), affirmed, 579 F. 2d 194 (2 Cir. 1978); Wallace v. Target Store, Inc. 92 Misc. 2d 454, 400 N. Y. S. 2d 478 (1977). Most recently, a New York appellate court upheld the exercise of Seider-type jurisdiction in light of Shaffer v. Heitner. Alford v. McGaw, 61 App. Div. 2d 504, 402 N. Y. S. 2d 499 (1978).

This exercise of jurisdiction differs in many important respects from the Delaware sequestration procedure invalidated in Shaffer: First, sequestration did not parallel the asserted state interest in the management of state-chartered corporations —sequestration could be used in *any* suit against a nonresident, and in fact did not guarantee jurisdiction over corporate fiduciaries. By contrast, Minnesota's garnishment procedure specifically premises jurisdiction on attachment of the obligation to respond to claims in the underlying action, Minn. St. 571.41, subd. 2(3). Delaware's interest in supervising its corporations' fiduciaries established only the propriety of Delaware *law*, not necessarily a Delaware *forum*. 433 U. S. 214, 97 S. Ct. 2586, 53 L. ed. 2d 704. Minnesota's legitimate interest in facilitating recoveries for resident plaintiffs[5] not only requires provision of a

---

[5] Cf. Minichiello v. Rosenberg, 410 F. 2d 106 (2 Cir. 1968); McGee v. International Life Ins. Co. 355 U. S. 220, 78 S. Ct. 199, 2 L. ed. 2d 223 (1957); Hess v. Pawloski, 274 U.S. 352, 47 S. Ct. 632, 71 L. ed. 1091 (1927).

A state's interest in providing a forum for its residents is particularly strong where an alternative forum would not have permitted recovery. In the instant case, Indiana's guest statute would have cut off Savchuk's claim. Ind. Stat. § 9-3-3-1. A plaintiff's lack of access to an alternative forum might be a legitimate consideration in justifying exercise of jurisdiction. Shaffer v. Heitner, 433 U. S. 186, 211, note 37, 97 S. Ct. 2569, 2584, 53 L. ed. 2d 683, 702. We also note, in this regard, that by the time the trial court ruled on Savchuk's motion to amend the complaint

local forum, but may override traditional choice of law analysis. See, Schwartz v. Consolidated Freightways Corp. of Delaware, 300 Minn. 487, 221 N. W. 2d 665 (1974), appeal after remand, 306 Minn. 564, 237 N. W. 2d 385 (1975) (applying Minnesota comparative negligence law where plaintiff was a Minnesota resident, although accident occurred in contributory-negligence state). The stock sequestered in Delaware was completely unrelated to the plaintiff's cause of action, constituting only an attachable asset used to compel the defendants' personal appearance. 433 U. S. 208, 97 S. Ct. 2585, 53 L. ed. 2d 700. In the instant case, the insurer's obligation to defend and indemnify, while theoretically separable from the tort action, has *no* independent value or significance apart from accident litigation. In the accident litigation, however, it is inevitably the focus, determining the rights and obligation of the insurer, the insured, and practically speaking, the victim.

More importantly, because this assertion of state court jurisdiction is, as has long been acknowledged, a "hybrid," its jurisdiction does not rest exclusively on Harris v. Balk, 198 U. S. 215, 25 S. Ct. 625, 49 L. ed. 1023 (1905).[6] This court and other

by making State Farm Mutual a party, the Indiana two-year statute of limitations had run.

One commentator states that a plaintiff's residence "may be deemed an overriding minimum contact" sufficient to justify the exercise of jurisdiction, where no alternative forum exists. Zammit, Quasi-in-Rem Jurisdiction: Outmoded & Unconstitutional? 49 St. John's L. Rev. 668, 682 (1975).

[6] Most recently in O'Connor v. Lee-Hy Paving Corp. 579 F. 2d 194, 198 (2 Cir. 1978), the Second Circuit Court of Appeals by Judge Friendly distinguished Seider from Harris in light of Shaffer.

"* * * What sharply differentiates these cases from those just hypothesized is that a judgment for the plaintiff will not deprive a defendant of anything substantial that would have been otherwise useful to him. He could not recover, sell or hypothecate the covenant to indemnify; its utility is solely to protect him from liability and in an appropriate case to allow the plaintiff to recover from the insurer * * *. What we said in *Minichiello, supra,* nine years ago *apropos of Harris v. Balk* remains just as true today: '* * * a Seider judgment would

courts have evaluated due process challenges to such an assertion of jurisdiction in terms of minimum contacts and fairness. Savchuk v. Rush, 311 Minn. 480, 487, 245 N. W. 2d 624, 629 (1976) ; Simpson v. Loehmann, 21 N. Y. 2d 305, 311, 287 N. Y. S. 2d 633, 637, 234 N. E. 2d 669, 672 (1967) ; Rintala v. Shoemaker, 362 F. Supp. 1044, 1053 (D. Minn. 1973). See, Alford v. McGaw, 402 N. Y. S. 2d 499, 502 (App. Div. 1978).

Just as Shaffer compels perforation of the *in rem* fiction as a jurisdictional base, we are obligated to consider the practical relationship between the insurer and the nominal defendant here. The insurer's garnished obligation to respond is complemented by the insured's obligation to cooperate. Our limitation of liability to policy limits protects the named defendant from personal exposure. The result is often labeled a procedural alternative to a direct action statute, a preferred alternative which permits insurer anonymity. See, Alford v. McGaw, 402 N. Y. S. 2d 499, 503 (App. Div. 1978) ; See, also, Mehren & Trautman, "Jurisdiction to Adjudicate: A Suggested Analysis," 79 Harv. L. Rev. 1121, 1168. This label does not obviate the due process scru-

---

*mean simply that liability policies, on which appellants could not have realized for any purpose other than to protect themselves against losses to others, will be applied to the very objective for which they were procured.'* 410 F. 2d 118 (emphasis supplied). Moreover, since the insurance policy was purchased to protect against the type of liability which is the subject of the lawsuit and since the obligation to defend clearly encompasses the litigation, *Seider* does not sanction 'the type of *quasi in rem* action typified by *Harris v. Balk* and the present case [sequestration of shares in a Delaware corporation],' where the property which 'serves as the basis for * * * jurisdiction is *completely unrelated* to the plaintiff's cause of action,' *Shaffer v. Heitner, supra,* 433 U. S. 208-09, 97 S. Ct. 2582, 53 L. ed. 2d 700-01 (emphasis supplied). The fall of *Harris v. Balk* therefore does not necessarily topple *Seider,* * * *."

See, also, Smit, "The Enduring Utility of In Rem Rules: A Lasting Legacy of *Pennoyer v. Neff,*" 43 Brooklyn L. Rev. 600, 603-24 (1977), cited in Shaffer, 433 U. S. 208, note 30, 97 S. Ct. 2582, 53 L. ed. 2d 700, and, Jonnet v. Dollar Sav. Bank of New York, 530 F. 2d 1123, 1138-39 (3 Cir. 1976) (Gibbons, J., concurring), cited in Shaffer, 433 U. S. 205, 97 S. Ct. 2581, 53 L. ed. 2d 698.

tiny. Cf., Watson v. Employers Liability Assurance Corp. 348 U. S. 66, 75 S. Ct. 166, 99 L. ed. 74 (1954). It does, however, serve to minimize the traditional "jurisdictional bias" in favor of the nominal defendant.

Similarly, limiting the availability of this type of quasi in rem jurisdiction to residents of the forum, Savchuk v. Rush, 311 Minn. 480, 485, 245 N. W. 2d 624, 628 (1976), minimizes the potential for abuse and forum-shopping.[7] See, Rintala v. Shoemaker, 362 F. Supp. 1044, 1056 (D. Minn. 1973). Again, we note that the trial court in its discretion can always grant a motion to dismiss on the grounds of forum non conveniens, should the defendant's burden outweigh the plaintiff's interest in a Minnesota forum and other relevant factors. 311 Minn. 489, 245 N. W. 2d 630.

We view as relevant the relationship between the defending parties, the litigation, and the forum state. It cannot be said that Minnesota lacks such minimally requisite "contacts, ties, or relations" to those defending parties as to offend the requirements of due process. In view of our consistent policies of providing a forum to residents of this state and extending our jurisdiction to the maximum limits consistent with due process, we decline to reverse our prior decision.

Accordingly, the order of the district court is affirmed.

OTIS, JUSTICE (dissenting).

The inference to be drawn from this remand is not, in my opinion, that we are free to distinguish Shaffer and reinstate the judgment vacated by the Supreme Court. As I construe it, we are simply afforded an opportunity to revise our decision to conform to Shaffer on the assumption we would have reached a different conclusion had Shaffer been decided when we wrote Savchuk. Any other inference would lead to the unlikely conclusion

---

[7] Although Jeffrey Savchuk was a resident of Indiana at the time of the accident, Savchuk, then 19 years old, accompanied his parents in their move to Minnesota six months later. He has established and continued residency; we find no suggestion of forum-shopping in the record.

that the Supreme Court was merely delegating to us its responsibility to resolve a difficult constitutional question.

Three specific rules recognized in Shaffer dispose of the jurisdictional issue here presented.

*First.* A forum state acquires no jurisdiction either in rem or in personam merely by the location in that state of property owned by defendant, unless such property is the subject of the litigation. Otherwise it is available only to satisfy a judgment. 433 U. S. 210, 97 S. Ct. 2583, 53 L. ed. 2d 701.

*Second.* In order to obtain either in rem or in personam jurisdiction the *defendant* must have certain minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 433 U. S. 203, 97 S. Ct. 2580, 53 L. ed. 2d 697.

*Third.* It is the relationship among the defendant, the forum, and the litigation which is the basis for jurisdiction over a nonresident, not their relationship with the *plaintiff*. 433 U. S. 208, 97 S. Ct. 2582, 53 L. ed. 2d 700.

■ The majority holds that while the stock sequestered in Shaffer "was completely unrelated to plaintiff's cause of action" the State Farm's obligation to defend and indemnify is "inevitably the focus" in this litigation and determines "the rights and obligations of the insurer, the insured, and practically speaking, the victim." However, this is not the test of jurisdiction, I submit.

Under the explicit holding of Shaffer, whether or not State Farm's contingent liability is a property right is wholly immaterial unless it is the subject matter of the litigation. There is no dispute as to the amount or scope of coverage under the policy. It is no more the subject of the litigation than would be a bank account available in Minnesota to satisfy the judgment. Absent a controversy involving the policy which is justiciable in Minnesota, the mere happenstance of an asset such as insurance being available to satisfy a judgment no longer confers in rem jurisdiction. In other words, the fact defendant is financially responsible in Minnesota is not enough without some other "con-

tacts, ties, or relations" with the state as defined in International Shoe v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. ed. 95 (1945).

■ A policy of providing a forum to residents of this state, extending our jurisdiction to the maximum limits consistent with due process is relied on by the majority. This is certainly the legislative intent and one with which I have no quarrel. The problem is that the majority stresses the forum's relationship with the plaintiff, whereas the constitutional test is the contact of the defendant with the forum.

The majority leans on note 37 in Shaffer for the proposition that the unavailability to plaintiff of any other forum is an important factor in acquiring jurisdiction over a nonresident defendant. That note, however, gives no support for such a rule. It merely states "This case does not raise, and we therefore do not consider, the question whether the presence of a defendant's property in a State is a sufficient basis for jurisdiction when no other forum is available to the plaintiff." 433 U. S. 211, note 37, 97 S. Ct. 2584, 53 L. ed. 2d 702. Nor can I agree that "Minnesota's legitimate interest in facilitating recoveries for resident plaintiffs not only requires provision of a local forum but may override traditional choice of law analysis." The Schwartz case, cited in reliance for that rule, must be read in the context of Shaffer, now the governing law. No mention is made in Shaffer of the relevance of "minimum contacts" between plaintiff and the forum as modifying the rules set forth in International Shoe.[1]

■ This is an action for personal injuries and not a declaratory judgment suit to construe a liability policy. As in Shaffer the plaintiff did not allege and does not now claim that defendant ever set foot in Minnesota. He does not identify any act related to his cause of action as having taken place in Minnesota. The issue of in personam jurisdiction was extensively discussed

---

[1] In Shaffer both the plaintiff and the defendants were nonresidents of the forum.

in Hanson v. Denckla, 357 U. S. 235, 250, 78 S. Ct. 1228, 1238, 2 L. ed. 2d 1283, 1296 (1958). In that case the United States Supreme Court affirmed the decision of a Delaware court refusing to give full faith and credit to a Florida probate proceeding on the ground the Florida court failed to have jurisdiction over a Delaware trustee holding property which was the subject of the Florida probate proceedings. In affirming the decision of the Delaware court the Supreme Court made these observations:

"* * * As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of *Pennoyer v. Neff*, 95 U. S. 714, to the flexible standard of *International Shoe Co. v. Washington*, 326 U. S. 310. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." 357 U. S. 250, 78 S. Ct. 1238, 2 L. ed. 2d 1296.

The court stressed the fact that the trust agreement was executed in Delaware and the settlor was domiciled at that time in Pennsylvania and did not become domiciled in Florida until some years later. The court reached the following conclusion:

"* * * The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's ac-

tivity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U. S. 253, 78 S. Ct. 1239, 2 L. ed. 2d 1298.

"It is urged that because the settlor and most of the appointees and beneficiaries were domiciled in Florida the courts of that State should be able to exercise personal jurisdiction over the nonresident trustees. This is a non sequitur." 357 U. S. 254, 78 S. Ct. 1240, 2 L. ed. 2d 1298.

"* * * It does not acquire that jurisdiction by being the 'center of gravity' of the controversy, or the most convenient location for litigation. The issue is personal jurisdiction, not choice of law. It is resolved in this case by considering the acts of the trustee. As we have indicated, they are insufficient to sustain the jurisdiction." 357 U. S. 254, 78 S. Ct. 1240, 2 L. ed. 2d 1298.

■ When plaintiff was injured, he and defendant were both Indiana residents, driving on an Indiana highway in a car registered in Indiana and insured in Indiana by a policy written in that state. The record discloses no relationship between defendant and the State of Minnesota. The fact that his insurer also does business in Minnesota is not, of course, attributable to any activity on the part of defendant. To paraphrase the words of Mr. Justice Marshall in Shaffer, defendant has simply had nothing to do with the State of Minnesota and had no reason to expect to be haled before a Minnesota court. By acquiring an insurance policy with State Farm he did not surrender his right to be brought to judgment only in a state with which he had minimum contacts. Mr. Justice Stevens' comments in his concurring opinion apply with equal force to the role of defendant's liability insurance in this case:

"One who purchases shares of stock on the open market can hardly be expected to know that he has thereby become subject

to suit in a forum remote from his residence and unrelated to the transaction. * * * If its procedure were upheld, Delaware would, in effect, impose a duty of inquiry on every purchaser of securities in the national market. For unless the purchaser ascertains both the state of incorporation of the company whose shares he is buying, and also the idiosyncrasies of its law, he may be assuming an unknown risk of litigation." 433 U. S. 218, 97 S. Ct. 2587, 53 L. ed. 2d 706.

Shaffer reiterates the rule laid down in International Shoe and applies it to in rem jurisdiction:

"* * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations." 326 U. S. 319, 66 S. Ct. 160, 90 L. ed. 2d 104.

Defendant himself, it is conceded, has not simply had minimum contacts with Minnesota. He has had no contacts with Minnesota. Under such circumstances it is not my notion of fair and orderly administration of justice to require a citizen of Indiana, because he carried liability insurance, to come to Minnesota to defend himself against the claims of another Indiana citizen who as had no contact with this state until his parents elected for undisclosed reasons to make Minnesota his residence. As was noted in the prior dissent:

"Plaintiff's statement of the case indicates that all of the witnesses and records, as well as a treating physician, are located in Indiana, except for plaintiff's family and two Minnesota physicians who, presumably, treated him after he moved to Minnesota." 311 Minn. 480, 495, note 11, 245 N. W. 2d 624, 633 (1976).

Our long-arm statute is designed essentially to give redress to bona fide citizens of Minnesota who have suffered a wrong by the harmful intrusion of a nonresident into this jurisdiction. It is reasonable to expect nonresidents who do business here or who otherwise enjoy the privileges and protection of our laws to respond in our courts for injury caused citizens of this state by virtue of their activities. However, where, as here, the injury occurred in a foreign state at a time when Minnesota had no connection with either the parties or the cause of action, I fail to see the logic or the beneficial public policy of encouraging after-the-fact forum shopping to secure retroactive jurisdiction in this state.

Accordingly I would reverse.

ROGOSHESKE, JUSTICE (dissenting).
I join in the dissent of Mr. Justice Otis.

PETERSON, JUSTICE (dissenting).
I join in the dissent of Mr. Justice Otis.